FILED
CLERK
4/5/2019 10:18 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF NEW YORK

------------------------------------X
                                    :
ROBERT BESEDIN, SR.,                :
                                    :   18-CV-00819 (KAM)
                 Plaintiff,         :
                                    :
           v.                       :
                                    :   100 Federal Plaza
COUNTY OF NASSAU, et al.,           :   Central Islip, New York
                                    :
                 Defendants.        :   February 11, 2019
------------------------------------X

        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
             BEFORE THE HONORABLE GARY R. BROWN
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:         FREDERICK K. BREWINGTON, ESQ.
                           Law Offices of Frederick K.
                             Brewington
                           556 Peninsula Boulevard
                           Hempstead, New York 11550

For the Defendants:        RALPH J. REISSMAN, ESQ.
                           Nassau County Attorney's Office
                           One West Street
                           Mineola, New York 11501

Court Transcriber:         RUTH ANN HAGER, C.E.T.**D-641
                           Typewrite Word Processing Service
                           211 N Milton Road
                           Saratoga Springs, New York 12866
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1  (At 11:43 a.m.)
2              THE CLERK:  Civil cause for a status conference in
3  18-CV-00819, Besedin against the City of Nassau.
4              Counsel, please state your appearances for the
5  record.
6              MR. BREWINGTON:  For Robert Besedin, Sr., Law
7  Offices of Frederick K. Brewington by Frederick K. Brewington,
8  556 Peninsula Boulevard, Hempstead, New York.  Good morning,
9  Your Honor.
10             THE COURT:  Good morning.
11             MR. REISSMAN:  For defendants Deputy County Attorney
12 Ralph Reissman, One West Street, Mineola, New York.  Good
13 morning, Your Honor.
14             THE COURT:  Good morning.  Mr. Reissman, it's been a
15 while.  It's good to see you again.
16             MR. REISSMAN:  Thank you.
17             THE COURT:  Have you a seat.  Make yourself
18 comfortable.
19             All right.  Mr. Brewington, where are we on this
20 case?
21             MR. BREWINGTON:  And Judge, if it's okay with you,
22 I'll maintain my seat again.
23             THE COURT:  Please.  Please do.
24             MR. BREWINGTON:  This case was kind of slow tracks
25 initially because we thought that it might be something that

1  might just require some close look by the County in terms of
2  settlement.
3          THE COURT:  Okay.
4          MR. BREWINGTON:  Mr. Besedin is a 74 -- currently a
5  74-year-old gentleman who was --
6          THE COURT:  I remember.  This was the one that was
7  on video.
8          MR. BREWINGTON:  That's correct.
9          THE COURT:  Okay.
10         MR. BREWINGTON:  And the video has been turned over
11 to the County, along with photographs, and I think that
12 Mr. Reissman has had a chance to look at a good part of the
13 video.  I just told him -- told him that we can give him some
14 citations within the video that he needs to look maybe a
15 little further on that will give him some additional
16 information.
17         But we believe that the video, along with what I
18 provided to him today, which is particularly the felony
19 complaint charging Mr. Besedin with assault in the second
20 degree on these officers, which was dismissed, is helpful to
21 Mr. Reissman.  I don't think he's had access to that up until
22 this point.  There has not been any paper discovery other than
23 the disclosure of the information that has taken place from my
24 office to Mr. Reissman.
25         And Judge, frankly, that was kind of anticipated at

1  this point --
2         THE COURT: Okay.
3         MR. BREWINGTON: -- because both -- let me just say
4  this. My position is, is that we could spend a lot of money
5  and a lot of effort on this case. I took this directly to the
6  District Attorney's Office. They chose not to prosecute these
7  officers for whatever reason. It's beyond my abilities to do
8  that, but in this situation anybody that looks at this looks
9  at what they swore to in their felony company and looks at
10 this video because when they swore out their felony complaint
11 they had no idea there was a video rolling.
12        And it is -- this is one that really I lose sleep
13 over.
14        THE COURT: This was security video in the house.
15 Is that what --
16        MR. BREWINGTON: Yes.
17        THE COURT: Okay.
18        MR. BREWINGTON: Yeah, he had to put it on. And
19 Judge, I believe -- and here is the holdup, and I've told
20 Mr. Reissman this.
21        In 2005 Mr. Besedin had a car accident where he
22 suffered a traumatic brain injury. Here he -- and I -- this
23 is based on the reports of his wife, and I've tried several
24 cases with traumatic brain injury. His wife said immediately
25 after this his behavior changed drastically in terms of self-

1  care and other things, ability to deal with normal things that
2  he might normally deal with in his business.  He does auto
3  mechanic work.  He owns his own business.  And I have -- maybe
4  I foolishly thought that the VA would do a good job at this.
5  So they would -- they wanted to do a neuro psych.  I looked at
6  some of their records.  They are not helpful in any degree.
7          So I told Mr. Reissman that I need to check to see
8  if this is an exacerbation of a traumatic brain injury that he
9  suffered back in 2005 because the records from the hospital
10 when he was taken to the hospital after this arrest showed
11 that he was unconscious for a period of time and has post-
12 concussion syndrome.  That was their analysis but they did not
13 do a full neuro psychiatric evaluation of any sort.  So that's
14 the difference in this case.
15         If it's a traumatic brain injury case, my settlement
16 position is quite different than if it is he got knocked out,
17 had post-concussion syndrome, was falsely arrested.  I mean,
18 the numbers changed drastically and I need to evaluate that
19 for -- to make my demand.  So I have not made a demand to the
20 County at this point.
21         THE COURT:  Okay.  Mr. Reissman.
22         MR. REISSMAN:  Yes, Judge, I have reviewed most of
23 the video.
24         THE COURT:  What do you see on the video?
25         MR. REISSMAN:  See -- it's not an audio -- there's

no audio present, but visually it's a very disturbing video where the officers -- at least one officer puts him in a headlock and throws him down to the ground.

The only explanation in the police records that I saw was that he -- Mr. Besedin had been making frequent calls to 9-1-1, apparently because his neighbors were putting garbage on his property. That's what the police records show but it's a very disturbing video. I don't -- it looks like a physically unprovoked attack. Certainly there's no physical -- although Mr. Brewington did show me the felony complaints, I did not see any physical threat or force from Mr. Besedin.

So it's a case that I think should be settled without going into years of discovery, but I'd like to hear what Mr. Brewington's doctors have to say and then I can get maybe an independent medical examination.

THE COURT: Okay. Great. The only question I have for you then, I want to set on track is, do you want my help or do you want to do it by yourselves? It's up to you.

MR. BREWINGTON: Judge, my suggestion may be let me get the neuro psych done privately.

THE COURT: Okay.

MR. BREWINGTON: Let me make my demand and then at that point it may be helpful to enlist you.

MR. REISSMAN: I agree.

1  THE COURT: Yeah? Okay. Good. So tell you what
2 we'll do. Who knows? Maybe Mr. Brewington can demand
3 something and you say, sounds great, and then it ends. That
4 doesn't usually happen that way, but I'm just saying you talk
5 amongst yourselves. And why don't you -- rather than sort of
6 hold you to an artificial schedule, why don't you just let me
7 know when you went to come in and we'll just set something up
8 and we can do that and so --
9  MR. BREWINGTON: I will. Judge, with regard to our
10 current schedule, okay just to leave it as is for now and if
11 we need to tweak it we can make that request?
12  THE COURT: You can do that consent on ECF. If you
13 agree to it, I'll do it almost -- almost instantly, like the
14 speed of electronics itself. So -- and look, I know both of
15 you quite well. I know you both are very reasonable and you
16 work hard on your cases so I imagine you can -- we can find a
17 path to work this out. And if you need my help that's why
18 they pay me the relatively modest salary, so I'm here.
19  Anything else I can do for you today?
20  MR. REISSMAN: Nothing from defendants, Your Honor.
21  MR. BREWINGTON: Nothing from us at this point.
22  THE COURT: All right. Sorry for the delay, the
23 confusion before, but I like to see both of you, and keep up
24 the good work on this.
25  MR. BREWINGTON: Thank you, Judge.

```
                                                              8
 1            THE COURT:  All right.  Good seeing you.
 2              (Proceedings concluded at 11:51 p.m.)
 3                        *  *  *  *  *  *
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1  I certify that the foregoing is a court transcript
2  from an electronic sound recording of the proceedings in the
3  above-entitled matter.
4
5  *[signature: Ruth Ann Hager]*
6  _____
7  Ruth Ann Hager, C.E.T.**D-641
8  Dated: April 4, 2019