# THE LAW OFFICES OF
# FREDERICK K. BREWINGTON

*Attorneys and Counselors at Law*
556 Peninsula Blvd., Hempstead, New York 11550
Phone: 516-489-6959 • Fax: 516-489-6958 • www.brewingtonlaw.com

Frederick K. Brewington
Maria K. Dyson
Albert D. Manuel III

Oscar Holt III
Of Counsel

October 4, 2021

**Via ECF**
Hon. Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: *Besedin v. County of Nassau, et. al.*
         Docket No. 18-CV-0819 (KAM)(ST)

Dear Judge Matsumoto;

  I write to respond to defense counsel's letter dated September 27, 2021 to these chambers, requesting a pre-motion conference to discuss Defendants' anticipated motion to partially dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(c).

  Therein, Defendants assert that Plaintiff's causes of action for false arrest, false imprisonment, abuse of process, denial of due process, equal protection, failure to intervene, negligence, and negligent hire and supervision are without factual basis and must be dismissed. Respectfully, these assertions are incorrect.

  Firstly, Defendants argue that Plaintiff's causes of action for false arrest, false imprisonment, and denial of due process must fail because Defendant police officers possessed probable cause to arrest Plaintiff. Specifically, Defendants contend that "[r]eview of plaintiff's repeated non-emergency, drunk 911 calls shows there was probable cause to arrest him for obstruction of governmental administration, harassment, and possibly other crimes warranting dismissal of this claim."

  Plaintiff begs to differ. Plaintiff was not arrested for or charged with any of these enumerated offenses except harassment, and the Information charging Plaintiff with harassment makes no mention whatsoever of the calls to 911. *See* Complaint, ¶ 22. This is due to Defendants' misleading portrayal of both the chronology and character of their interactions with the Plaintiff. Upon information and belief, many of the calls made by Plaintiff to 911 were accidental "pocket dials," and would have been noted as such by the 911 operators. Further, several police officers had responded to Plaintiff's residence that same day prior to the dispatch of Defendants Beckworth and Mantovani, and departed without concluding that it was necessary to arrest Plaintiff. All degrees of OGA and harassment codified in NYS Penal Law require intent. It is clear from the transcripts of Plaintiff's calls to 911, and noted by the 911 operators, that he is disoriented and incoherent. Defendants had no basis to conclude that Plaintiff intended to obstruct or harass, or

indeed to suspect that Plaintiff was anything other than a confused senior citizen seeking help. Plaintiff's behavior was, at most, "susceptible of innocent as well as culpable interpretation," which has long been soundly rejected as an appropriate basis for probable cause. *People v. De Bour*, 40 N.Y. 210, 216 (N.Y. 1976).

Even assuming arguendo the existence of probable cause to arrest Plaintiff upon Defendants' arrival, it ceased shortly thereafter. On the video recording, Defendants Beckworth and Mantovani are seen entering Plaintiff's home and remaining there for a considerable amount of time before exiting the house without incident. They are then seen conversing with Plaintiff in a congenial manner, and Defendant Beckworth is observed smiling and laughing mere moments before assaulting Plaintiff and placing him under arrest. *See* Complaint, ¶ 22-25. Defendants' behavior indicates their realization that Plaintiff presented no threat and had no criminal intent. Probable cause will "dissipate" due to the "discovery of some intervening fact" which would exonerate the accused, such as Plaintiff's age and obvious state of disorientation. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996). This "intervening fact" can also be "proof that the police falsified, misrepresented, or suppressed evidence," as Defendants did when they filed a Felony Complaint and two District Court Informations against Plaintiff based upon their own demonstrably false testimony. *See* Complaint, ¶ 38-40; *Lowth*, 82 F.3d at 571; *Cox v. County of Suffolk*, 780 F.Supp. 103 (E.D.N.Y. 1991).

Turning to abuse of process, Defendants' assertion that Plaintiff has not alleged improper use of criminal process after being charged is factually incorrect, and Defendants' citation to *Cook* is misleading. *Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 1994). It is true that Plaintiff's charges were dismissed prior to indictment, however he was still arraigned, charged, and jailed. Like the *Cook* plaintiff, Mr. Besedin, Sr. was held in police custody for a significant amount of time due to Defendants' fraudulent accusations. *Id.* Far beyond "mere[ly] [. . .] issuing process," Defendants in fact subjected the 71-year-old Plaintiff to three days in jail, and required his family to put up $5,000 cash over $10,000 bond to secure his freedom. *See* Complaint, ¶¶ 30, 35; *Elek v. Inc. Vill. Of Monroe*, 2011 WL 4472027 (S.D.N.Y. 2011). Plaintiff was obligated to appear in court for nearly a year, as the fraudulent charges against him were only dismissed when he refused to grant the Nassau County District Attorney any further adjournments. *See* Complaint, ¶ 30. Additionally, Defendants caused Plaintiff to be issued numerous tickets, eventually resulting in the towing and impound of Plaintiff's truck, despite being parked in front of Plaintiff's house in the same manner as it had been for several years prior to Plaintiff's interaction with Defendant police officers. *See* Complaint, ¶ 34. Defendants subjected Plaintiff to this process in order to obtain their collateral objectives, which were initially to punish Plaintiff for annoying them, and then to cover up their own unlawful, excessive, abusive conduct. These objectives are clearly "outside the legitimate ends of the process." *Cook*, 41 F.3d at 80.

Plaintiff's due process claims are similarly preserved by Defendants' blatantly unlawful motivations for arresting and detaining him. The Second Circuit takes the well-settled position that the "'touchstone of due process' is protection from 'the exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" *Edrei v. Maguire*, 892 F.3d 525, 535 (2d Cir. 2018), *citing Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-846. As discussed *supra*, Defendants did not have probable cause to arrest or detain Plaintiff, and "probable cause" to believe that Plaintiff committed a crime is "essential for pre-trial detention" under the Fourth Amendment. *Lynch v. City of New York*, 335 F. Supp. 3d 645 (S.D.N.Y. 2018), *citing Manuel v.*

*City of Joliet, Ill.*, 137 S. Ct. 911, 919-20 (2017). *Harris v. Cty. of Nassau*, 581 F. Supp. 2d 351 (E.D.N.Y. 2008), is therefore of no help to Defendants.

Defendants' invocation of *Figueroa v. Mazza*, 59 F. Supp. 3d 481 (E.D.N.Y 2014), is similarly inapplicable. *Figueroa* merely adopts the Southern District's ruling in *Sash v. United States*, 674 F.Supp.2d 531 that assaults which take place in "less than thirty seconds" do not provide an opportunity to intervene. It is clear from the video recording that Defendants' interaction, communication, and assault of Plaintiff was significantly more protracted, and Plaintiff has alleged that both Defendant police officers participated at various times in assaulting him. *See* Complaint, ¶ 21-27. Defendants Beckworth and Mantovani had multiple "realistic opportunit[ies] to intervene" in each other's excessive, unjust, and constitutionally violative conduct. *See* Complaint, ¶ 24-26. *Sash*, 674 F.Supp.2d at 545. Their "affirmative duty to intervene" to protect Plaintiff's constitutional rights from "infringement by other law enforcement officers in their presence" was therefore undiminished. *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

With respect to Plaintiff's negligence claims, Defendants operate under a misunderstanding. Plaintiff's claim of negligence does not flow from Defendants' intentional conduct, but rather their omissions while Plaintiff was in their care and custody. *See, e.g. Aguilera v. County of Nassau*, 453 F. Supp. 2d 601 (E.D.N.Y. 2006). Plaintiff informed Defendants at the scene of his arrest that he wore hearing aids, and that Defendants had dislodged his hearing aids in the course of assaulting him, but Defendants made no effort to retrieve them. *See* Complaint, ¶ 33. Consequently, Plaintiff was unable to intelligibly communicate with police or medical providers until after his release and costly replacement of his hearing aids. Further, rather than taking Plaintiff directly to the hospital as they were required to do, Defendants caused the 71-year-old Plaintiff, who was concussed, bleeding, urinating, and obviously disoriented, to be chained to a bench at the police station for a considerable amount of time before summoning an ambulance. *See* Complaint, ¶ 31-32. Defendants failed to inform the EMTs that they had inflicted a head injury on Plaintiff, which resulted in Plaintiff's initial visit to the Nassau University Medical Center being limited to a standard "fit for confinement" examination in which only his superficial injuries were treated, despite a finding on February 8, 2021 that Plaintiff had previously suffered a Traumatic Brain Injury (TBI) and cerebral infarction. Due to Defendants' actions, Plaintiff remained in jail suffering from an undiagnosed aggravated TBI for three days. Valuable opportunities for treatment were forfeited through Defendants' negligence.

After consultation with the Plaintiff and due consideration of information gained since the filing of the Complaint, Plaintiff's counsel respectfully withdraws their equal protection claim, as well as their claims arising under the First, Fifth, and Sixth Amendments.

Respectfully submitted,

FREDERICK K. BREWINGTON

CC: All counsel via ECF