UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

ROBERT BESEDIN, SR.,                                   DOCKET NO.: CV-18-819
                                                                                            (NRM)(ST)

                        Plaintiff,

        -against-


COUNTY OF NASSAU, NASSAU COUNTY POLICE
DEPARTMENT, POLICE OFFICER STEPHEN
BECKWITH AND POLICE OFFICER JOHN
MANTOVANI in their individual and official capacities,

                      Defendants.
-----------------------------------------------------------------------X

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS
IN OPPOSITION TO DEFENDANTS' COUNTY OF
NASSAU, NASSAU COUNTY POLICE DEPARTMENT,
POLICE OFFICER STEPHEN BECKWITH AND
POLICE OFFICER JOHN MANTOVANI
MOTION FOR SUMMARY JUDGMENT
PURSUANT TO LOCAL RULE 56.1
AND COUNTER-STATEMENT OF FACTS**

      Pursuant to Local Rule 56.1 for the Eastern District of New York, Plaintiff **Robert Besedin** submits this Statement of Disputed Material Facts in Opposition to Defendants' **COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT, POLICE OFFICER STEPHEN BECKWITH AND POLICE OFFICER JOHN MANTOVANI** (collectively "DEFENDANTS") Motion for Summary Judgment. Further, Plaintiff respectfully avers that, in addition to those assertions made by the Defendants which are disputed here, this document is provided, pursuant to Local Civil Rule 56.1, as a Counter-Statement of Facts in support of Plaintiff's contentions that genuine facts are in dispute. The facts and contentions listed below in Plaintiff's Counter Statement are not all-inclusive of each and every disputed issue, but are provided to demonstrate the level and

complexity of the disputed issues which permeate this case. Further, references provided in support of each of the issues raised are not all-inclusive, and are offered to comply with the Local Rule. Further, Plaintiff objects to the Defendants' improper misstatement of facts so as to lead to deceptive and inaccurate conclusions.

**Undisputed and Disputed Facts**

1.      Defendant Police Officer Stephen Beckwith was at all times a police officer with the Nassau County Police Department.

   *Plaintiff's Response:*

   While Defendants fail to provide any support for this fact, Plaintiff alleged in their Complaint that:

   14.     That DEFENDANT POLICE OFFICERS STEPHEN BECKWITH AND JOHN MANTOVANI, (hereinafter referred to as "DEFENDANT OFFICERS"), were at all times herein mentioned police officers, employed by the COUNTY and POLICE DEPARTMENT under the direction of COUNTY and POLICE DEPARTMENT, and DEFENDANT OFFICERS were acting in furtherance of the scope of their employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the COUNTY and POLICE DEPARTMENT. (Comp. ¶14)

The Defendants' Answer ¶14 of the Complaint was:

   14. Deny the allegations set forth in paragraph 14, except admit that defendants Stephen Beckwith and John Mantovani are employed by the Nassau County Police Department; that they acted at all times relevant to the Complaint within the scope of such employment; and aver that since this paragraph fails to specify any "statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or County," no response thereto is required from defendants. (Answer ¶14)

Accordingly, this fact Not Disputed.

2.      Defendant Police Officer Dominick Mantovani i/s/h/a John Mantovani was at all times a police officer with the Nassau County Police Department.

*Plaintiff's Response:*

Not Disputed. See Response to 1 above.

3.  Between approximately 1:34 pm and 6:00pm on February 7, 2017, Plaintiff called 911 over twenty times from his residence at 2150 Harrison Avenue in Baldwin, New York. (Exhibit. D; Exhibit E; Exhibit. F; and Exhibit G.)

*Plaintiff's Response:*

Disputed. Defendants do not state what these four alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff. Further, Plaintiff testified that he did not call 911"over twenty times" and he could not identify himself on any calls and had no recollection of making the calls. (Besedin Dep. pp. 52, 56, 63, 78 and 170) and there is no evidence that for all calls that were allegedly made that all were made "from his residence."

4.  Officers Mantovani and Beckwith were initially dispatched to plaintiff's home to respond to a burglary report. (Exhibit. H at pp. 27; Exhibit. 1 at pp. 41-45)

*Plaintiff's Response:*

Disputed in part and Not Disputed in part. Defendants do not state what these two alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff. Assuming these Exhibits are the deposition transcripts of Defendants Mantovani and Beckwith , they do state that they were responding to a complaint of a burglary, but do not designate that it was at Plaintiff's place of employment. The testimony referenced is hearsay.

5.  Neither officer had ever met plaintiff before. (Exhibit H at pp. 27 and 34; Exhibit I at p. 59)

*Plaintiff's Response:*

Not Disputed in part. Defendants do not state what these two alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff.

6. Thereafter, Officers Mantovani and Beckwith were dispatched to plaintiff's home several more times that day in response to plaintiff's repeated calls to 911. (Exhibit. H at 32; Exhibit. I at p. 59; and Exhibit. J)

*Plaintiff's Response:*

Disputed in part and Not Disputed in part. Defendants do not state what these three alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff. Assuming that two of these Exhibits are the deposition transcripts of Defendant Mantonvani states he went to Plaintiff's home a total of three times. (Mantovani Dep. pp. 60-61). The testimony referenced is hearsay.

7. Throughout the course of these numerous phone calls plaintiff became increasingly irate and belligerent, often cursing and yelling at the 911 operators. (Exhibit D; Exhibit E; Exhibit H at pp. 27, 32-35, 44, 47, 53 and 55; and Exhibit I at pp. 41-45, 59, and 61-63)

*Plaintiff's Response:*

Disputed in part and Not Disputed in part. Defendants do not state what these three alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff. The conclusory statement are denied by Plaintiff and he disputed that he "became increasingly irate and belligerent." (Besedin Dep. pp. 85-86)

8. Each time Officer Mantonvani and Beckwith responded to plaintiff's home he appeared to be increasingly irate, belligerent, aggressive, and intoxicated. (Exhibit H at pp. 33-34, 64, 68, and 71-72 and Exhibit I at pp. 59-70)

4

*Plaintiff's Response:*

Disputed. Defendants do not state what these three alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff. Defendants do not state what these three alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff. The conclusory statement are denied by Plaintiff and he disputed that he "appeared to be increasingly irate, belligerent, aggressive, and intoxicated." (Besedin Dep. pp. 73, 85-86)

9. Plaintiff continued to call 911 and continued to yell and curse at the operators, at one point stating that he was going to "make an emergency" and that advising the officers that they would "see something happen." (Exhibit D, Track 170063414 911 Call 2 and Exhibit E)

*Plaintiff's Response:*

Disputed. Defendants do not state what these two alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff. There been no certified transcript of any alleged statements made by Plaintiff. Plaintiff disputes that Defendants' interpretation of what is said on any call is accurate and fails to reference context as to any alleged statements.

10. Officers Mantonvani and Beckwith were dispatched to respond to a harassment in progress because plaintiff had been yelling at and threatening the 911 operators. (Exhibit. H at pp. 44 and Exhibit. I at pp. 59-63).

*Plaintiff's Response:*

Disputed. Defendants do not state what these two alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff. Assuming that two of these Exhibits are the deposition transcripts of Defendants Mantovani and Beckwith they do state that they were responding to a harassment but did not know what the call was about and were not aware of any claim it was based on "yelling at

and threatening the 911 operators.". In fact, Defendant Mantovani testified that "We were just trying to gather and help him and figure out why it was actually dispatched as a harassment which we found out later..." (Mantovani Dep. p. 60) This allegation is also based on hearsay.

11. Plaintiff was advised that if he continued to call 911 and yell at the operators, he would be arrested for harassment. (Exhibit D at Track 1700634 14 91 1 Call 6 at 3:52-4:25; Exhibit. E at p. 5, Exhibit. H at p. 62; and Exhibit. I at pp. 62-63)

*Plaintiff's Response:*

Disputed. Defendants do not state what these two alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff. No certified transcript of any alleged statements made by Plaintiff. Plaintiff disputes that Defendants' interpretation of what is said on any call is accurate and fails to reference context as to any alleged statements. Further, Plaintiff disputes that he was "advised that if he continued to call 911 and yell at the operators, he would be arrested for harassment." In fact neither Defendant Mantovani or Beckwith testified that they advised Mr. Besedin that he would be arrested for calling 911. (Beckwith and Mantovani Deps.)

12. Plaintiff continued to call 911 and continued to yell and curse at the operators (Exhibit D and Exhibit E)

*Plaintiff's Response:*

Disputed. Defendants do not state what these two alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff. No certified transcript of any alleged statements made by Plaintiff. Plaintiff disputes that Defendants' interpretation of what is said on any call is accurate and fails to reference context as to any alleged statements. Further, Plaintiff disputes that he "continued to call 911 and continued to yell and curse at the operators." (Besedin Dep. pp. 73, 85-86) In fact,

Defendants returned to Plaintiff's home because "[h]e was calling back requesting that we come there, so we respond to the calls..." (Deposition of Defendant Beckwith p.52)

13. At approximately 6:50pm Officers Mantonvani and Beckwith were dispatched to plaintiff's home again. (Exhibit H at p. 47)

*Plaintiff's Response:*

Disputed in part and Not Disputed in part. Defendants do not state what this alleged Exhibit is and have not provided copies of any Exhibits to Plaintiff. Assuming this Exhibit is the deposition transcript of Defendant Beckwith, he testified that arrived at 6:50 p.m. but does not state on page 47 when he was actually dispatched at that time. Any claim of being dispatched is hearsay.

14. Upon returning to plaintiff's home, Officers Mantonvani and Beckwith spoke with plaintiff on his porch. During the conversation plaintiff was yelling, cursing, and hitting the front door. (Exhibit H at pp. 64, 68, and 71-72 and Exhibit I at pp.65-70)

*Plaintiff's Response:*

Disputed. Defendants do not state what these alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff. Assuming one of these Exhibits is the deposition transcript of Defendant Mantovani actually went into Plaintiff's home for some time and went " through the doorway threshold, but not actually into the rooms of the house" and was told Plaintiff to leave and go back on the porch. (Deposition of Defendant Beckwith p.65-66) (Mantovani Dep. pp. 65, 93-94)(Besedin Dep. pp. 78-79) . He also disputes that he was "yelling, cursing and hitting the front door."

15. Eventually, Officer Beckwith pointed at plaintiff and told him to go back inside his home. (Exhibit H at pp. 81 and 85 and Exhibit I at p. 74)

*Plaintiff's Response:*

Disputed. Defendants do not state what these alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff. Assuming these Exhibits are the deposition transcripts of Defendants. Plaintiff disputes that he was "told [ ] to go back inside his home" while standing on his porch. (Besedin Dep. pp. 86-87)

16. Plaintiff then smacked Beckwith's hand down. (Exhibit. H at pp. 80-81 and Exhibit I at pp. 71, 74-75)

*Plaintiff's Response:*

Disputed. Defendants do not state what these alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff. Assuming these Exhibits are the deposition transcripts of Defendants. Plaintiff disputes that he "smacked Beckwith's hand down." (Besedin Dep. p. 95) Defendant Beckwith claims he extended his hand toward Plaintiff and invaded the space of Plaintiff and that is when Plaintiff allegedly pushed his hand down. (Deposition of Beckwith pp. 80-85)

17. At that point, the officers placed plaintiff under arrest. (Exhibit H at pp. 81-83 and 88; Exhibit I at p. 77).

*Plaintiff's Response:*

Disputed. Defendants do not state what these alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff. Assuming these Exhibits are is the deposition transcripts of Defendants. Plaintiff disputes that he was told he was placed under arrest (Besedin Dep. p. 88), Plaintiff was viciously abused, battered, assaulted and violated by Defendants and then falsely seized and falsely charged. (NC Bates #s: 25-28)

18. While attempting to place plaintiff in custody, Officer Mantonvani sustained an injury to his left ankle for which he was treated in the emergency room of Mount Sinai South Nassau. (Exhibit H at p. 127-128; Exhibit J at p. 83-84, 110; and Exhibit N).

*Plaintiff's Response:*

Disputed. Defendants do not state what these alleged Exhibits are and have not provided copies of any Exhibits to Plaintiff. Assuming these Exhibits include the deposition transcripts of Defendants. Plaintiff disputes "[w]hile attempting to place plaintiff in custody, Officer Mantonvani sustained an injury." It is disputed that Defendant Mantonvani sustained any real injury and that any claimed injury was as a result of his vicious, abusive and assaultive actions that violated and injured Plaintiff. (Video Designated in the Deposition of Beckwith as " Beckwith 19" Besedin MOV Number 1 - video)

19. Plaintiff was charged with Assault in the Second Degree, Harassment in the Second Degree, and Resisting Arrest. (Exhibit K).

*Plaintiff's Response:*

Not Disputed. Notwithstanding this position, Defendants do not state what this alleged Exhibit is and have not provided copies of any Exhibits to Plaintiff, however Plaintiff was also charged with Assault n the Third Degree. (Certificated of Disposition, Bates# BESEDIN.0327)

20. Plaintiff retained legal counsel and after appearing in court on one occasion, the charges were dismissed. (Exhibit L at pp. 48-50)

*Plaintiff's Response:*

Disputed in part and Not Disputed in part. Defendants do not state what this alleged Exhibit is and have not provided copies of any Exhibits to Plaintiff. These alleged facts that Plaintiff retained

9

legal counsel is not disputed however, the charges against Mr. Besedin remained before the Court from February 7, 2017 to January 29, 2018. (Certificated of Disposition, Bates# BESEDIN.0327) Plaintiff was jailed for three days (Besedin Dep. pp. 45, 122-124) and during that over 11 months, Plaintiff remained subject to the Courts jurisdiction, was free on bail and was required to appear by the court on more than one occasion after being released from jail.(Comp. ¶35)

## **PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL FACTS IN DISPUTE**

Plaintiff Robert Besedin sets forth the following material factual assertions in opposition to the purported factual assertions set forth by Defendants in its Rule 56.1 Statement of Facts:

1. All charges against Mr. Besedin were dismissed because:

"Per Steve Schwartz, dismiss CPL 170.30 (1)(f) the people have made a determination to the acts of the Defendant on the date of incident to not constitute harassment and therefore must dismiss all charges as the remaining charges of resisting arrest and assaulting an officer flow from the harassment charge." (NC Bates #s: 25-28)

2. In the interviews with the District Attorney or Internal Affairs, as of the date of his deposition, no one ever asked Defendant Mantovani if he threw Mr. Besedin down the stairs.

Q: Not my question. My question was with the DA or Internal Affairs,
anybody ever ask you if you threw Mr. Besedin down the steps?
A: No. (Mantovani Dep. p. 152)

3. Mantovani never viewed the video with anyone from Internal Affairs and he was never asked any questions by Internal Affairs about the video. (Mantovani Dep. pp. 56, 83)

4. In the early afternoon of February 7, 2017, Officer Mantovani was operating RMP 122 as a single car and received a call from dispatch to go to 2510 Harrison Avenue regarding a burglary report. (Mantovani Dep. pp. 40-41)

5. Officer Mantovani claims that he was unaware that Mr. Besedin had scars to his head, back, elbows, wrists and legs. (Mantovani Dep. p. 148)

10

6. Contrary to video evidence, Officer Mantovani claims that he did not slam Plaintiff down on the steps striking his tail bone and that he did not use any force against Mr. Besedin. (Mantovani Dep. pp. 100-101, 149-50)(Besedin Movie #2-Time Marker 2:50)

7. Contrary to video evidence, Officer Mantovani that he did not recall that he put his hands on top of Mr. Besedin's shoulders and pushed him down with his palms going down toward the ground. (Mantovani Dep. p. 102)(Besedin Movie #2-Time Marker 2:50)

8. Defendant officers went to Mr. Besedin's home approximately three times on the evening of the arrest. On the second visit they "were just trying to gather and help him and figure out why it was actually dispatched." Defendant officers did not know at that time that he was making so many calls to 911. (Mantovani Dep. pp. 60-61)

9. On the second call to Mr. Besedin's home after speaking with him and the passage of 20 minutes the Defendant officers went back to their cars "updated our memo books and we resumed regular patrol and drove away." (Mantovani Dep. p. 61)

10. The Defendant officers went back to Mr. Besedin's home a third time with a message from the desk officer that if he continued to call making these threats over the phone that he would be arrested for aggravated harassment, but never reported delivering any such message. (Mantovani Dep. p. 63)

11. On the third visit to Mr. Besedin's home after a couple of minutes of Defendant Mantovani speaking with Plaintiff, Defendant Mantovani was able to reason with Plaintiff and went inside the house to speak with Mr. Besedin and was speaking with him. (Mantovani Dep. pp. 65, 93-94)

12. At the time Mr. Besedin was in his house and then on his porch he was not committing any crimes, and had told the Defendant officers to leave, but the officers decided to stay. (Mantovani Dep. pp. 68-69)

13. After coming out of Mr. Besedin's house Defendant Mantovani was not on the porch but two or three steps down from the porch and Mr. Besedn. (Mantovani Dep. pp. 71, 94)

14. When Mr. Besedin was on his porch and Defendant Mantovani was below him one, did Mr. Besedin did not attempt to come down the steps at him.(Mantovani Dep. p. 72)

15. Contrary to video evidence Defendant Mantovani denies that he ever grabbed Mr. Besedin by the neck (Mantovani Dep. pp. 81-81) (Besedin Movie #1-Time Marker 7:21)

16. Despite watching the video approximately 20 times Defendant Mantovani denies he grabbed Mr. Besedin by the neck. (Mantovani Dep. p. 82)

17. The video clearly shows Defendant Mantovani throwing Mr. Besedin down while hold him by the neck. (Besedin Movie #1-Time Marker 7:21)

18. Defendant Mantovani admits that he actually threw Mr. Besedin down the steps. (Mantovani Dep. p. 84)

19. Defendant Mantovani wrote his Internal Affairs statement with the help of his union representative. (Mantovani Dep. p. 92)

20. Defendant officers admit that they told Mr. Besedin to go into his home, but had no legal authority to do so. Then Defendant Mantovani changed his statement to they were suggesting that he go into his home. (Mantovani Dep. pp. 126, 122-123)

21. Defendant Mantovani admits that Mr. Besedin had a right to curse on his property; the right to holler and scream; had the right to drink. (Mantovani Dep. pp. 122-123)

12

22. Defendant Beckwith claims he arrested Mr. Besedin between the hours of 1850 and 1912 hours. (Beckwith Dep. p. 50).

23. Defendant Beckwith remained parked outside of Mr. Besedin's home even when he determined Mr. Besedin's prior complaints were unfounded. (Beckwith Dep. pp. 52-3).

24. At or around 1850 hours of February 7, 2017, Defendant Beckwith states he spoke with Mr. Besedin on his front porch for several minutes. (Beckwith Dep. p. 61).

25. Defendant Beckwith states that Mr. Besedin did not physically prevent him from stepping down the porch. (Beckwith Dep. pp. 72-73).

26. Defendant Beckwith does not recall making an attempt to step down the stairs of the front porch. (Beckwith Dep. pp. 78-79).

27. Defendant Beckwith took the first physical movement by pointing and extending his hand toward Mr. Besedin. (Beckwith Dep. p. 84).

28. Defendant Beckwith told Mr. Besedin to go back into his house. (Beckwith Dep. p. 85). Mr. Besedin was lawfully on his property, and there was never any curfew, legal order, court order, order of protection or warrant for Mr. Besedin to go back into his home. (Beckwith Dep. pp. 86-88).

29. Defendant Beckwith arrested Mr. Besedin for harassment. (Beckwith Dep. pp. 88, 104).

30. Contrary to the video evidence Defendant Beckwith stated that he never saw anyone put their hands on Mr. Besedin's neck that night. (Beckwith Dep. p. 105)(Besedin Movie #1-Time Marker 7:21).

31. It was Defendant Beckwith's intention that the charges against Mr. Besedin go forward and that he be convicted of the charges. (Beckwith Dep. p. 109). Beckwith spoke with the District Attorney's Office regarding the matter. (Beckwith Dep. pp. 107-108).

32. Ultimately, the charges against Mr. Besedin were dismissed. (Beckwith Dep. p. 109).

33. Prior to Defendant Beckwith's criminal case against the Plaintiff being dismissed, he reviewed the video of the incident and was asked questions regarding the video by the District Attorney's office. (Beckwith Dep pp. 115-116)

34. The only injury Defendant Beckwith claims to have seen on Mr. Besedin was a scrape or bruise on his arm while Mr. Besedin was in the arrest room. (Beckwith Dep p. 121.)

35. Defendant Beckwith claims that he did not know if Mr. Besedin hit any part of his body when he came down off the steps. *Id*

36. Defendant Beckwith signed the felony complaint against Mr. Besedin in order to move forward in the prosecution of Robert Besedin. (Beckwith Dep p. 124.)

37. Defendant Beckwith filled out the felony assault document so that Mr. Besedin would be held responsible for Defendant Beckwith's claimed assault on a police officer. (Beckwith Dep p. 133.)

38. Defendant Beckwith claimed that Mr. Besedin was holding on to him. (Beckwith Dep p. 136, 137.)

39. Defendant Beckwith did not report that Mr. Besedin held him in any of the three (3) Complaints filed by Defendant Beckwith (Felony Complaint and District Court Informations, charging Mr. Besedin, Besedin bates stamp# 276-279, Beckwith Dep 133, 134, 138, 140.)

40. Contrary to the video evidence Defendant Beckwith testified that neither he nor Officer Mantovani threw Mr. Besedin down the steps. (Beckwith Dep p. 150)(Besedin Movie #1-Time Marker 7:21).

41. Defendant Beckwith does not know how Mr. Besedin received injuries to his elbows, and did not see any scars or lacerations to Mr. Besedin's back. (Beckwith Dep p. 177)

42. Defendant Beckwith does not know how the injuries to Mr. Besedin's buttocks or wrists occurred during his interaction with himself and Mantovani. (Beckwith Dep pp. 177, 178.)

43. When the officers turned to leave Mr. Besedin's home, Mr. Besedin came outside of his home, which he had every right to do. (Beckwith Dep p. 185.)

44. Defendant Beckwith saw no marks, scars, abrasions or anything in Mr. Besedin's head, back, legs. (Beckwith Dep p. 195, 196.)

45. Defendant Beckwith put on black gloves during this incident. (Beckwith Dep p. 204.)

46. Defendant Beckwith acknowledged that he can see Mr. Besedin being thrown down the steps at 7:18:07 of the video recording of the incident. (Beckwith Dep p. 214.)(Besedin Movie #1-Time Marker 7:21)

47. Defendant Beckwith falsely testified that he came down the steps at the same time as Mr. Besedin. (Beckwith Dep p. 215.)

48. Defendant Beckwith testified that he did not come down the steps prior to Mr. Besedin. Beckwith Dep p. 215.

49. Defendant Beckwith testified that Officer Mantonvani had Mr. Besedin by the shoulders. (Beckwith Dep p. 217, 218.)

15

50. Defendant Beckwith repeatedly and falsely testified that he did not see Officer Mantovoni push Mr. Besedin down onto the steps. (Beckwith Dep pp. 218-220)(Besedin Movie #1-Time Marker 7:21)

51. Contrary to the video evidence Defendant Beckwith denies that Officer Mantovoni held Mr. Besedin around the neck and threw him down the steps. (Beckwith Dep pp. 224-225)(Besedin Movie #1-Time Marker 7:21).

Dated: Hempstead, New York
October 16, 2023

Respectfully submitted,

LAW OFFICES OF
FREDERICK K. BREWINGTON

By: *Frederick K. Brewington*
FREDERICK K. BREWINGTON
Attorneys for Plaintiff
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959