UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ROBERT BESEDIN, SR.,

               Plaintiff,

        v.

COUNTY OF NASSAU, NASSAU
COUNTY POLICE DEPARTMENT,
POLICE OFFICER STEPHEN BECKWITH
and POLICE OFFICER JOHN
MANTOVANI, in their individual and
official capacities,

               Defendants.

No. 18-cv-0819 (NRM) (ST)

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTIONS IN LIMINE

SOKOLOFF STERN, LLP
Kiera J. Meehan
Andrew Blancato
<u>Attorney for Defendants</u>
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500

# TABLE CONTENTS

**TABLE CONTENTS**................................................................................................i

**TABLE OF AUTHORITIES** ...............................................................................ii

**MOTION I**          …………………………………………………………………1

  **POINT I**          …………………………………………………………………1

    **N.G. BERRILL SHOULD BE PRECLUDED FROM TESTIFYING AS HIS DIAGNOSES OF TRAUMATIC BRAIN INJURY AND POSTTRAUMATIC STRESS DISORDER ARE SPECULATIVE AND UNRELIABLE**............................................................................................ 1

  **POINT II**          5

    **IN THE ALTERNATIVE, DR. BERRILL SHOULD BE PRECLUDED FROM TESTIFYING AS TO CAUSATION FOR TBI** ............................................ 5

**MOTION II**          10

**THE COURT SHOULD PRECLUDE ADMISSION OF THE SURVEILLANCE VIDEOS AS THEY ARE INCOMPLETE AND CANNOT BE AUTHENTICATED** ........................................................................................................ 10

**MOTION III**          13

**PLAINTIFF SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE RELATED TO DEFENDANTS' LITIGATION HISTORY AS IT IS IRRELEVANT AND OUTWEIGHED BY SUBSTANTIAL PREJUDICE** ........................ 13

**MOTION IV**          15

**PLAINTIFF SHOULD BE PRECLUDED FROM CALLING LLOYD J. NADEL, ESQ. AS A WITNESS AT TRIAL**........................................................................... 15

**MOTION V**          17

**PLAINTIFF SHOULD BE PRECLUDED FROM CALLING** ............................. 17
**LAURA BESEDIN AT TRIAL** ................................................................... 17

**MOTION VI**          18

**PLAINTIFF SHOULD BE PRECLUDED FROM REQUESTING A SPECIFIC DOLLAR AMOUNT FROM THE JURY** .................................................... 18

**CONCLUSION** …………………………………………………………….. 19

i

# TABLE OF AUTHORITIES

Cases  Pages

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002) ................................................................................. 1

*Arlio v. Lively*,
474 F.3d 46 (2d Cir. 2007) ................................................................................. 13

*Beech Aircraft Corp. v. Rainey*,
488 U.S. 153, (1988) ......................................................................................... 12

*Boykin v. W. Express Inc.*,
2016 WL 8710481 (S.D.N.Y. Feb 5, 2016) ...................................................... 11

*Choi v. Tower Rsch. Cap. LLC*,
2 F.4th 10 (2d Cir. 2021) .................................................................................... 1

*Consorti v. Armstrong World Industries, Inc.*, 72 F.3D 1003, 1016 (2d Cir. 1995) ………...18, 19

*Edwards v. City of New York*,
2011 U.S. Dist. LEXIS 75300 (E.D.N.Y 2011) ............................................... 14

*El Ansari v. Graham*,
2019 WL 3526714 (S.D.N.Y. Aug. 2, 2019)........................................................ 5

*Figueroa v. Boston Sci. Corp.*,
2003 U.S. Dist. LEXIS 10936 (S.D.N.Y. June 25, 2003) ................................. 14

*Frye v. United States*,
293 F. 1013 (D.C. Cir. 1923)................................................................................ 5

*Jones v. 4030 Bronx Blvd. Assoc. LLC*,
54 A.D. 3d 42 (1st Dep't 2008)............................................................................ 6

*Kennedy v. Supreme Forest Prod., Inc*,
2017 WL 2225557 (D. Conn. May 22, 2017) ................................................... 11

*Lane* v. *American Airlines, Inc.*,
2024 WL 1200074 (E.D.N.Y., Mar. 20, 2024)..................................................... 5

*Leo v. Long Island R. Co.*,
307 F.R.D. 314 (S.D.N.Y. 2015)....................................................................... 11

*Leong v. 127 Glen Head Inc.,* No. CV135528, 2016 WL 845325, (E.D.N.Y. Mar. 2, 2016) ..... 16

*LinkCo, Inc. v. Fujitsu Ltd.*,
   2002 WL 1585551 (S.D.N.Y. July 16, 2002) .............................................................. 2

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   232 F. Supp. 3d 558 (S.D.N.Y. 2017) ....................................................................... 13

*Mileski v. Long Island R.R. Co.*, 499 F.2d 1169, 1172 (2d Cir. 1974) ...............................18

*Mikus v. United States*,
   433 F.2d 719 (2d Cir. 1970) ...................................................................................... 11

*Moore v. Sequeira*,
   2024 WL 1013301 (D. Conn. Mar. 8, 2024) ............................................................. 11

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ........................................................................................ 1

*Parker v. Mobil Oil Corp.*,
   7 N.Y. 3d 434 (2006) .................................................................................................... 5

*Richmond v. General Nutrition Ctrs., Inc.*,
   2012 U.S. Dist. LEXIS 32070 (S.D.N.Y. Mar. 9, 2012) .......................................... 13

*Rosario v. City of New York*,
   2021 WL 1930293 (S.D.N.Y. May 13, 2021) ............................................................. 4

*Ruggiero v. Warner-Lambert Co.*,
   424 F.3d 249 (2d Cir. 2005) ........................................................................................ 5

*Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005 .......................................17

*Tardif v. City of New* York,
   344 F. Supp. 3d 579 (S.D.N.Y. 2018) ......................................................................... 1

*Tardif v. City of New York*,
   2022 WL 2195332 (S.D.N.Y. June 17, 2022) ............................................................ 8

*U.S. Info. Sys., Inc. v. Int'l Bhd of Elec Workers*,
   313 F. Supp. 2d 213 (S.D.N.Y. 2004) ......................................................................... 6

*United States v. Yevakpor*,
   419 F. Supp. 2d 242 (N.D.N.Y. 2006)....................................................................... 12

*Watson-Tobah v. Royal Moving & Storage Inc.*,
   2014 WL 6865713 (S.D.N.Y. Dec. 5, 2014) ............................................................... 5

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC,*
  571 F.3d 206 (2d Cir. 2009) ........................................................................................ 4

Rules

Fed. R. Civ. Procedure 26 ......................................................................................... 16

Fed. R. Evid. 106 ....................................................................................................... 12

Fed. R. Evid. 403 ....................................................................................................... 13

Fed. R. Evid. 404 ....................................................................................................... 13

Federal R. Evid 702 ..................................................................................................... 1

Fed. R. Evid 1002 ..................................................................................................... 10

## MOTION I

### POINT I

### N.G. BERRILL SHOULD BE PRECLUDED FROM TESTIFYING AS HIS DIAGNOSES OF TRAUMATIC BRAIN INJURY AND POSTTRAUMATIC STRESS DISORDER ARE SPECULATIVE AND UNRELIABLE

Dr. Berrill should not be permitted to testify because both diagnoses he makes in his expert report are either incomplete, speculative, or based on an unreliable methodology. Federal Rule of Evidence 702 provides an expert witness may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. Rule. Evid. § 702. The proponent of expert testimony "carries the burden of establishing its admissibility by a preponderance of the evidence." *Choi v. Tower Rsch. Cap. LLC*, 2 F.4th 10, 20 (2d Cir. 2021). "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). Reliability within the meaning of Rule 702 "requires a sufficiently rigorous analytical connection between [the expert's] methodology and the expert's conclusions." *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005). "The analysis must be reliable 'at every step.'" *Tardif v. City of New* York, 344 F. Supp. 3d 579 (S.D.N.Y. 2018) (quoting *Amorgianos*, 303 F.3d at 267). Even assuming that Dr. Berrill is qualified to offer an opinion on Plaintiff's medical capacity, his opinion that Plaintiff suffered posttraumatic stress

1

disorder ("PTSD") and a traumatic brain injury ("TBI") is unreliable and therefore he must be precluded from testifying.

Dr. Berrill's TBI Diagnosis

Plaintiff's expert report fails to demonstrate an analytical connection between his examinations of Plaintiff and his diagnosis that Plaintiff suffered a TBI, as he claims on page 15 of his expert report. *See* **Ex. A**[1], p. 15.   Dr. Berrill fails to explain in his report what defines/qualifies a TBI[2] what his diagnosis of TBI is based on, a glaring omission considering none of the medial records he reviewed diagnose Plaintiff with a TBI as a result of the subject incident. *See id.*, pp. 2 – 5.  The testing completed by Dr. Berrill further fails to correlate specific testing deficits with neuropsychiatric symptoms, offering only vague representations of Plaintiff's performance.  For example, Dr. Berrill indicates Plaintiff's short-term recall of verbally presented stories "was in the low average range, with delayed recall in the average range."  *See id.*, p. 12. Dr. Berrill fails to explain at any point in his report what the range is, how the range is significant, and how this exercise relates, if at all, to a diagnosis of TBI.  Later in his report Dr. Berrill concedes Plaintiff's personality/emotional functioning test results "were invalid." *Id.*, p. 13.  Correlating these vague or invalid testing results to a diagnosis of TBI is conclusory and inadequate.  *See LinkCo, Inc. v. Fujitsu Ltd.*, No. 00-CV-7242, 2002 WL 1585551, at *4 (S.D.N.Y. July 16, 2002) (quoting Fed. R. Evid. 702 Advisory Committee's Notes) ("the Court's gatekeeping function requires more than simply 'taking the expert's word for it'").

Dr. Berrill's testimony failed to strengthen the tenuous connection between his analysis and his TBI diagnosis.  In fact, Dr. Berrill conceded during his deposition that Plaintiff was not

---

[1] All exhibits will refer to those annexed to the Declaration of Andrew Blancato dated September 23, 2024 unless otherwise indicated.
[2] In fact, Dr. Berrill only uses the phrase "traumatic brain injury" *once* in his report – in the diagnostic impression section.  *See* **Ex. A**, p. 15.

someone "that could provide a good comprehensive and linear account of his life or medical problems." **Ex. B**, pp. 32 – 33. Dr. Berrill testified this made it difficult to assess Plaintiff with a traumatic brain injury considering he didn't know his full medical history. *Id.* at 33 (Q: When you're assessing psychology or mental injury or deficit is it important to have an understanding of that person's baseline capacity? A: It is important. Q: If that person is not able to provide an accurate medical history, are you able to get an accurate understanding of their baseline capacity? A: **I think it's difficult**.) (emphasis added). Dr. Berrill also seems to rely on his own discussions with Plaintiff's wife regarding her husband's mood and behavior, but admits he couldn't verify the accuracy of her claims. *See id.*, p. 42 (Q: As you sit here today, do you have any way of knowing if that's an accurate report? A: I don't know if that's accurate. That's the information that she provided).

Dr. Berrill's failure to proffer specific evidence in support of his diagnosis is particularly unreliable as it relates to TBIs, which invariably requires a comprehensive understanding of an individual's medical status. *See1 Bruce H. Stern & Jeffrey A. Brown, Litigating Brain Injuries* § 6:12.40 (perm. ed., rev. vol. 2021) ("[a] diagnosis of TBI requires consideration of several sources of information . . . [it] is a clinical diagnosis based on history, review of medical records, clinical examination and diagnostic testing. Together, utilizing all of these sources, a clinician can then make an appropriate diagnosis of traumatic brain injury").

Dr. Berrill has failed to meet this standard of reliability in diagnosing Plaintiff with TBI. Dr. Berrill lists no criteria, such as those published by the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-V"), used to diagnose Plaintiff with TBI. He fails to demonstrate which portion of Plaintiff's medical history supports a diagnosis of TBI. He fails to explain the correlation between some of the testing used during his examinations of Plaintiff and

3

his diagnosis of TBI, and further fails to discuss those testing results in any comprehensive manner. His diagnosis is not clinical but speculative, and therefore should not be shared at trial. *See Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213-14 (2d Cir. 2009) ("[a] trial judge should exclude expert testimony if it is speculative or conjectural").

Dr. Berrill's PTSD Diagnosis

For similar reasons, Plaintiff's diagnosis of PTSD by Dr. Berrill is also unreliable. Dr. Berrill claims Plaintiff was found to have "significant clinical elevations" on testing associated with the Detailed Assessment of Posttraumatic Stress ("DAPS") scale. Dr. Berrill fails to give a scale for what a significant clinical elevation means, but more importantly, Dr. Berrill fails to specify in what ways Plaintiff was found to have behavior consistent with the criteria of PTSD pursuant to DSM-V.[3] For example, Dr. Berrill provides in his report Plaintiff had elevations of peritraumatic dissociation ("PDIS"), but fails to list at what point during his interviews with Plaintiff did he exhibit PDIS. *See generally*, **Ex. A**. Likewise, Dr. Berrill indicates Plaintiff had elevated signs of re-experiencing ("RE") trauma, which Dr. Berrill describes as a scale which is evaluated by "intrusive thoughts, flashbacks, memories, upsetting dreams or nightmares of the traumatic event" as well as "psychological distress . . . upon trauma reminiscent of events and stimuli." *Id.* at 14. Yet when interviewed by Dr. Berrill, Plaintiff *denied* having flashbacks or nightmares, and even though he told Dr. Berrill that people told him they saw him on television after the incident, there's no indication anywhere that Plaintiff was distressed by this fact. *Id.* at 10. While it's possible Dr. Berrill could have reached his diagnosis by finding the other DSM-V criteria were acutely elevated in comparison to the RE scale, Dr. Berrill fails to state this, making his conclusion opaque at best and baseless at worst. *Rosario v. City of New York*, No. 18 CIV.

---

3 https://www.ncbi.nlm.nih.gov/books/NBK207191/box/part1_ch3.box16/

4023 (LGS), 2021 WL 1930293, at *2 (S.D.N.Y. May 13, 2021) ("[expert]'s opinion and testimony are not unreliable because he deviated from the DSM-5's diagnostic criteria, but because he failed to provide a cogent explanation or justification for doing so").  In sum, Dr. Berrill's failure to specify with any considerable detail which symptoms led to his diagnosis of PTSD under DSM-V is fatal to his opinion.  *See El Ansari v. Graham*, No. 17 Civ. 3963, 2019 WL 3526714, at *4 (S.D.N.Y. Aug. 2, 2019) (finding diagnosis of a psychological disorder "unreliable because of the analytical gaps between the D[SM]-[5] guidelines that [the expert] purported to follow and [the expert's] diagnosis");

## POINT II

### IN THE ALTERNATIVE, DR. BERRILL SHOULD BE PRECLUDED FROM TESTIFYING AS TO CAUSATION FOR TBI

Should this Court permit Dr. Berrill to testify at trial, he should be precluded from testifying as to causation, since he fails to exclude other likely causes of his neuropsychological deficits such as his 2003 TBI or his history of alcohol abuse.   Expert causation testimony is "subject to the same standard as all other scientific evidence and is admissible only if it relies upon generally accepted principles to show a link between plaintiff's injury and defendant's product or conduct." *Parker v. Mobil Oil Corp.*, 7 N.Y. 3d 434, 438 – 439 (2006) (citing *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923)).  Failure to properly demonstrate how the methodology or data links a diagnosis to certain conduct "mandate[s] the exclusion of that unreliable opinion testimony . . . [under] *Daubert* and Rule 702."  *Lane* v. *American Airlines, Inc.,* No. 18-cv-6110, 2024 WL 1200074 at *8 (E.D.N.Y., Mar. 20, 2024) (quoting *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005); *see also, Watson-Tobah v. Royal Moving & Storage Inc.*, No. 13-cv-7483, 2014 WL 6865713, at *13 (S.D.N.Y. Dec. 5, 2014) ("The law is clear that a conclusory expert opinion as to causation is insufficient to defeat a motion for summary judgment").

Experts examining patients for neuropsychological impairments or neurovascular issues are no different.  *See Parker*, 7 N.Y. 3d at 447 ("it is apparent that plaintiffs have identified no procedures actually employed by their neuropsychologist that would enable him to offer a reliable causation opinion based on accepted methodology").  Specifically, its vital to a neuropsych opinion that an expert submit evidence and an accepted methodology that "those deficits are the result of one traumatic incident as opposed to another or even to rule out nontraumatic causes or cumulative effect of a series of [] traumas . . ." <u>Jones v. 4030 Bronx Blvd. Assoc. LLC</u>, 54 A.D. 3d 42, 49 – 50 (1st Dep't 2008).   This differential diagnosis need not "categorically exclude each and every possible alternative cause" but the opinion "must make some reasonable attempt to eliminate some of the most obvious [alternative] causes." *U.S. Info. Sys., Inc. v. Int'l Bhd of Elec Workers,* 313 F. Supp. 2d 213, 238 (S.D.N.Y. 2004).  Dr. Berrill fails to offer any differential diagnosis in his report at all. Instead, he finds Plaintiff suffers TBI and PTSD secondary to injuries suffered during his arrest despite the clear evidence his cognitive state was more severely impacted by  alcohol abuse and a prior life-altering TBI.

<u>Plaintiff's Prior TBI</u>

In 2003, Plaintiff suffered a TBI as a result of a major motor vehicle accident.  Plaintiff's wife, Judith Besedin, testified that Plaintiff had a fractured skull, required surgery, and was induced into a three-month coma as a result.  *See* Judith Besedin's deposition transcript, **Exhibit C,** p. 24.  Dr. Berrill acknowledged this prior TBI in his report (**Ex. A**, p. 2), but failed to discuss the impact it had on Plaintiff's long-term health, nor did he seem to bother to discover the severity of Plaintiff's symptoms from 2003.   A few examples: Dr. Berrill conceded he did not know Plaintiff was in a coma as a result of the TBI.  *See e.g.*, **Ex. B**, p. 52 (Q: Did you learn from any source that Mr. Besedin had been in a coma in 2003? A: I don't recall him saying anything about

6

being in a coma). Dr. Berrill did not know what cognitive therapy, if any, Plaintiff underwent as a result of his 2003 brain injury. *Id.*, p. 59 (Q: Do you know if he spent any time in a rehabilitation facility following that brain injury in 2003? A: I don't know what he did. I don't know if he went to a brain injury rehab center or anything like that). Dr. Berrill did not know whether Plaintiff underwent physical therapy or occupational therapy after his 2003 accident. *See id.* at 136 (Q: Do you know if Mr. Besedin ever attended physical therapy following his discharge from St. Charles? A: I don't know that he did. Q: Do you know if he attended outpatient occupational therapy? A: I don't know). Dr. Berrill could not interpret Plaintiff's medical records from his first TBI because he did not review them. *Id.* at p. 40 (Q: Did you review any medical records pertaining to the treatment he received for that head injury in 2003? A: No.). Dr. Berrill could not even say whether Plaintiff's behavior was different before or after the subject arrest. *Id.* at p. 63 (Q: So as you sit here, you cannot say whether the behavior that [Plaintiff] exhibited when you examined him is any different than the behavior he was exhibiting prior to February 7, 2017, correct? A: I can't say it's different).

Dr. Berrill's failure to discover this information is particularly baffling because he conceded that this information is relevant. For example, Dr. Berrill testified that the length of a prior coma is important because it "would give historical context . . . [of] how serious his head trauma was." *Id.* at 53. When asked what the impact could be to someone who was in a coma for one month – one-third the length of Plaintiff's 2003 coma – Dr. Berrill testified "they could be far-ranging." *Id.* at 58. After acknowledging he didn't review the medical records from Plaintiff's 2003 TBI, he testified he would have hoped he asked to see those records "because it would be useful to see . . . you want to get information about how serious that was, and what people had, diagnostically speaking, surmised about him, what the effects of the head injury were." *Id.* at 41.

And perhaps most importantly, after acknowledging all the information he did not have regarding Plaintiff's TBI history, he acknowledged that information was important to diagnoses in his particular field. *See id.* at p. 33 (Q: When you're assessing psychology or mental injury or deficit is it important to have an understanding of that person's baseline capacity? A: It is important). Dr. Berrill clearly did not have an understanding of Plaintiff's baseline capacity prior to 2017, because if he had, he wouldn't have concluded that the subject arrest caused his TBI.

This matter is similar to the facts of *Tardif v. City of New York*, No. 13-CV-4056, 2022 WL 2195332 (S.D.N.Y. June 17, 2022). In *Tardif*, defendants moved to preclude plaintiff's expert from testifying that the subject incident with NYPD officers in 2012 caused her traumatic brain injury, claiming plaintiff's expert failed to exclude other possible causes, such as a 2019 fall where she hit her head and a mild 2020 concussion. *Tardif*, 2022 WL at * 8. Plaintiff responded that her expert conducted an "implicit differential diagnosis" and ruled out those other head injuries because they occurred after plaintiff's MRI which showed white matter hyperintensity. *Id.* The court ruled in favor of defendants, finding in part, that because a TBI diagnosis is based on more than just imaging, the expert could not simply rely on the MRI imaging and rule out the other alternative head injuries. *Id.*

In the instant matter, Dr. Berrill similarly cannot justifiably rule out that the symptoms which he diagnosed and correlated to the subject arrest in 2017 were actually caused by Plaintiff's 2003 car accident. In fact, the likelihood that Plaintiff's current state was caused by this accident is much greater than the plaintiff in *Tardif* despite the gap in years, as it's uncontested that Plaintiff suffered a TBI and was induced into a coma for three months as a result of that accident. Plaintiff's wife, according to her interview with Dr. Berrill, also testified that Plaintiff was "irritable and impulsive" between 2003 and 2017, further cementing the connection to the car

8

accident rather than the arrest.  *See* **Ex. C**, p. 63.  Accordingly, since Dr. Berrill did not and cannot effectively rule out that Plaintiff's current neuropsychological status was caused solely by his 2003 accident, his testimony to causation should be precluded.

<u>Plaintiff's Alcoholism and Other Health Concerns</u>

Dr. Berrill addresses Plaintiff's history of alcoholism similarly to how he addresses Plaintiff's prior TBI; he acknowledges it in Plaintiff's medical history, fails to discuss it as it relates to his TBI condition, then surprisingly testifies to its neuropsychological significance.  For example, when asked if long-term alcohol use could have any impact on brain function, Dr. Berrill did not mince words.  *Id.* at 65 (Q: Does the long-term use of alcohol have any impact on brain function? A: It can, yeah.  Q: In what way? A: It can essentially destroy brain cells or it can impede brain functioning. So you have a host of neuropsych problems that can crop up as a consequence of chronic, severe alcohol consumption).  Dr. Berrill further concedes Plaintiff's wife told him Plaintiff's alcohol consumption "was a problem" (*id.* at 65) and confirmed the Veterans Administration medical records he reviewed spoke of alcohol abuse and that his sense was "this was not a new issue they were referring to."  *Id.* at 66.

Despite what seems like a clear connection between Plaintiff's neuropsychological issues and his alcoholism, Dr. Berrill inexplicably *rules out* alcohol abuse from his diagnostic impression, further enhancing the illusory connection between Plaintiff's current state and the alleged injuries he suffered in the subject arrest.  **Ex. A,** p. 15.  When confronted with his bizarre decision to rule out alcohol abuse from his diagnostic impression, Dr. Berrill walks back that decision, which should cast further doubt on the diagnoses and conclusions regarding causation that he makes.  **Ex. B**, p. 74 ("I may have said rule out alcohol abuse, but, you know, it seems apparent that I didn't

have to say rule out. I mean, it seems to me after the fact that certainly there seems to be alcohol abuse. I'm not questioning it").

Dr. Berrill further mentions the significance to his assessment of a transient ischemic attack ("TIA") (*id.*, p. 78), which he later acknowledges Plaintiff suffered upon reading that in a medical record. *Id.* at 81. Dr. Berrill also testifies that some of Plaintiff's "vascular abnormalities" are likely correlated to "age and hypertension." *Id.* at 90. Despite testifying to these factors, Dr. Berrill fails to rule out or mention how TIA or hypertension may have affected Plaintiff's neuropsychological state.

In sum, Plaintiff's opinion with regard to causation is highly specious, and "connected to existing data only by the *ipse dixit* of the expert." *Nimely*, 414 F.3d at 396. If Dr. Berrill is permitted to testify at trial, he should be precluded from testifying to causation, as he himself implies he is unable, in earnest, to accurately diagnose what factors caused Plaintiff's cognitive decline considering his severe medical history and his alcoholism. *See* **Ex. B**, p. 76 (Q: As you sit here today, are you able to determine with any degree of medical certainty what impact [Plaintiff's] alcohol abuse had on his cognition function? A: No . . . **[h]is situation is complicated because there's a bunch of factors that contribute to cognitive functioning and behavioral functioning so it's hard to parcel out and assign a percentage)** (emph. added). Accordingly, the Court should preclude him from testifying on this issue.

## MOTION II

### THE COURT SHOULD PRECLUDE ADMISSION OF THE SURVEILLANCE VIDEOS AS THEY ARE INCOMPLETE AND CANNOT BE AUTHENTICATED

The videos of the incident captured by Plaintiff's family should be precluded as it fails two cardinal measures of reliability. First, the videos should be excluded because they cannot be properly authenticated. Under Rule 1002 of the Federal Rules of Evidence, "[a]n original writing,

recording, or photograph is required in order to prove its content ..." Fed. R. Evid. 1002.  A duplicate, rather than an original, can be admissible unless "circumstances make it unfair to admit the duplicate" (*Kennedy v. Supreme Forest Prod., Inc*, No. 14-cv-01851, 2017 WL 2225557 at *3 (D. Conn. May 22, 2017) (internal quotations omitted);  *see also*, *Leo v. Long Island R. Co.*, 307 F.R.D. 314, 324 (S.D.N.Y. 2015) ("[a] party seeking to admit an item into evidence—whether a document, weapon, photograph, audio or video recording or other item—must first establish the item's genuineness").  Whether a duplicate or not, in order to authenticate a video, a party must demonstrate that the "events are accurately depicted."  *Boykin v. W. Express Inc.*, No. 12-cv-7428, 2016 WL 8710481 at *5 (S.D.N.Y. Feb 5, 2016) (citing *Mikus v. United States*, 433 F.2d 719, 725 (2d Cir. 1970)).

There is good reason to doubt the accuracy of Plaintiff's videos, which will be referred to as **Exhibit D**.  Plaintiff's son, Robert Besedin Jr., testified that the three videos that capture the incident are not original copies, but cell phone recordings of the footage taken from the surveillance video from his parents' former front porch.  *See* **Ex. E**, pp. 178 – 179.  Besedin Jr. also admits to fast-forwarding through the footage at several points up to *eight times* the regular speed of the original surveillance video because he believed there to be a "lull in the action." *See* **Ex. E**, pp. 165 - 174. These moments may seem boring to Besedin Jr., but many of these moments contain actions indicative of routine police work that could be relevant to a defense against false arrest or in defense of Plaintiff's demand for punitive damages.   These moments will now inevitably have less impact compared with other portions of the video because they are literally being fast-forwarded. This type of selective editing is impermissible and without the unedited copies, the video cannot be authenticated.  *See Moore v. Sequeira*, No. 21-cv-00787, 2024 WL

1013301, at *10 (D. Conn. Mar. 8, 2024) (granting defendant's motion to in limine to preclude Youtube video because unedited versions were no longer available).

The videos should also be excluded because they are incomplete.  Federal Rule of Evidence provides "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106; *see generally*, *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171-72, (1988).  Where a recording of a video is deemed incomplete and the complete video is unavailable, the incomplete version may be excluded.  *See* *United States v. Yevakpor*, 419 F. Supp. 2d 242, 246 (N.D.N.Y. 2006) (granting defendant's motion in limine seeking preclusion of three one-minute videotape segments in the absence of a video of defendant's entire stop and search).

In the instant case, Plaintiff has produced three video segments from his iPhone which are purportedly of his father's security camera footage from the night of the incident, none of which contain sound from the recorded events.  Yet when Plaintiff's wife, Judith Besedin, was asked at her deposition whether the surveillance equipment at her property included sound, her answer was unequivocal. *See* **Ex. C**, pp. 55 - 57 (Q: At that time, did you have a security camera system installed at the home at 2510 Harrison Avenue? A: Yes . . . Q: Do you know if the recordings picked up audio as well as video? A: Yes . . . Q: When you saw it, did it have audio? A: Yes).  This is an important issue because the conversations that occurred at the time of Plaintiff's incident play a crucial role in determining liability.  Not only do the Defendant Officers insist that Plaintiff was yelling profanity at them when they arrived, but that they were actively attempting to de-escalate the situation by telling Plaintiff they would leave if he would return inside his home.  *See* **Exhibit F**, Defendant Dominick Mantovani's deposition transcript, pp. 65, 74.  Had the original, complete

surveillance video been retained, the jury could listen as well as view the footage to determine whether this was true, in addition to hearing other relevant facts such as the tone of the parties and whether any threatening language was used. But the only copy of the footage is an edited, muted copy recorded from a cellular phone. Without the sound it originally possessed – according to the homeowner who lived with it – the footage should not be considered complete. Accordingly, it should be precluded.

## MOTION III

### PLAINTIFF SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE RELATED TO DEFENDANTS' LITIGATION HISTORY AS IT IS IRRELEVANT AND OUTWEIGHED BY SUBSTANTIAL PREJUDICE

To the extent Plaintiff seeks to introduce evidence concerning the Defendants' litigation history, he should be precluded because this information is irrelevant and its probative value is substantially outweighed by a danger of unfair prejudice to the defendants. *See* Fed. R. Evid. 403; *see also MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 568 (S.D.N.Y. 2017) (holding prior litigation evidence inadmissible under Rule 403). The only purpose for offering this evidence would be to suggest a propensity for the type of allegations Plaintiff is making, which is impermissible. *See* Fed. R. Evid. 404. Even if this evidence were somehow relevant to plaintiff's claims, admitting it would distract the jury from the claims at the heart of this case, and this Court should be "reluctant to cloud the issues in the case at trial by admitting evidence relating to previous litigation involving one or both of the same parties." *See Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007) (*citing* 2 Weinstein & Berger, Weinstein's Federal Evidence § 403.05[3][b], at 403–66.2); *see also Richmond v. General Nutrition Ctrs., Inc.*, No. 08-cv-3577 (PAE) 2012 U.S. Dist. LEXIS 32070 at *31 (S.D.N.Y. Mar. 9, 2012) (precluding the introduction of evidence of lawsuits against defendant because "the risk of unfair prejudice and

13

confusion from introducing documents reflecting allegations in other cases clearly outweighs the probative value of such claims"); *see also Figueroa v. Boston Sci. Corp.*, No. 00-cv-7922 (DC), 2003 U.S. Dist. LEXIS 10936 at *11 (S.D.N.Y. June 25, 2003) (finding that the probative value of introducing evidence of other lawsuits is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, and considerations of undue delay and waste of time").

The only other known litigation involving Defendant Mantovani are two *pro se* matters which were filed *after* the subject incident: *Ernest Curry v. Nassau County First Precinct*, 2-18-cv-01130-KAM (E.D.N.Y. filed Feb. 20, 2018) and *Allen v. Mantovani*, 2:22-cv-06659-JMA (E.D.N.Y. filed Oct. 31, 2022).   Not only have both matters been dismissed, but the facts of both cases are clearly distinguishable from the allegations against Defendant Mantovani here.  In *Curry,* plaintiff alleges he was tasered by Nassau County police officers effectuating a search warrant of his home, and does not even identify what role Defendant Mantovani played in the events that took place that night.  *See generally*, *Curry,* 2-18-cv-01130-KAM, ECF Doc. No. 1 (Complaint). In *Allen*, plaintiff claims he refused an officer's command during a traffic stop and lead Nassau County police officers on a chase, which allegedly ended with him crashing and getting assaulted by several officers.  Not only was this matter unilaterally discontinued by plaintiff, but Defendant Mantovani's role is again not identified.  *See generally*, *Allen*, 2:22-cv-06659-JMA, ECF Doc. No. 1. These cases are clearly not similar enough to warrant any type of mention at trial.  *See Edwards v. City of New York*, 2011 U.S. Dist. LEXIS 75300 (E.D.N.Y 2011) (holding officer's prior litigation could only be admitted to establish a pattern where situations were "nearly identical" and "share unusual characteristics") (internal citations omitted).

The only other known litigation involving Defendant Beckwith is a case filed only three months ago.  *See Jemerson v. County of Nassau et. al.*, 2:24-cv-04432-GRB (E.D.N.Y. filed June

14

21, 2024). While Defendant Beckwith is alleged to have falsely arrested and used excessive force against plaintiff in that matter, it's as a result of a littering violation near a Long Island Railroad station. *See Jemerson*, 2:24-cv-04432-GRB, ECF Doc. No. 1 (Complaint, ¶¶ 18 – 40). These facts are also clearly different, but if the allegations against Defendant Beckwith sound similar, it's likely because plaintiff's counsel in *Jemerson* is Plaintiff's counsel in this matter: Mr. Frederick Brewington.

This jury will not be aided in any way in hearing unrelated, *subsequent* claims in a fact-intensive use-of-force case; indeed, they would more likely be confused or misled. For these reasons, evidence of prior and subsequent lawsuits in which defendants are named should be excluded.

## **MOTION IV**

### **PLAINTIFF SHOULD BE PRECLUDED FROM CALLING LLOYD J. NADEL, ESQ. AS A WITNESS AT TRIAL**

In a draft of the JPTO exchanged with this firm on Saturday morning, Plaintiff lists Lloyd Nadel, Esq, Plaintiff's criminal defense attorney in the related criminal matter, as one of his witnesses who will be called as a witness during Plaintiff's case in chief. Specifically, Plaintiff claims Mr. Nadel will testify to "the change in Plaintiff's mental status over the passage of time, his observations of the impact of the criminal process on Mr. Besedin, and the response of Mr. Besedin to the charges against him and [the] bail process . . ." *See* **Ex. G**. As an intial matter, Mr. Nadel should be precluded to testify regarding these subjects because it exceeds the knowledge that Plaintiff had divulged in his original Rule 26 disclosure. Pursuant to Federal Rule 26, a party must provide "the name . . . of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses . . ." Fed. Rule. 26. Under Fed. R. Civ. P. 37(c)(1), a party "which fails to provide

15

information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Leong v. 127 Glen Head Inc.,* No. CV135528 (ADS) (AKT), 2016 WL 845325, at *3 (E.D.N.Y. Mar. 2, 2016).

In his Rule 26 disclosure, Plaintiff listed Mr. Nadel's subjects of information in the vaguest of terms, claiming he "possesses knowledge, and information regarding the facts as set forth in the Complaint of this matter." *See* **Ex. G**. This description does not provide notice to Defendants that Mr. Nadel would be testifying to the mental status of Plaintiff. Furthermore, Plaintiff does not purport that Mr. Nadel is a certified therapist, psychiatrist, neuropsychologist, or any other type of expert who is experienced in gauging one's mental status. Even if he were, his testimony on this subject would be clearly cumulative considering Plaintiff plans to call several other witnesses at trial who will testify to Plaintiff's allegedly deteriorated mental state, *to wit:* Dr. Berrill, Plaintiff's daughter, and Plaintiff himself. Even if one or more of these witnesses were to be precluded from testifying, Plaintiff would presumably be granted the opportunity to read-in deposition testimony from his late wife, Judith Besedin, who is now deceased. Mr. Nadel is not qualified to testify regarding Plaintiff's mental or emotional state.

Furthermore, Mr. Nadel should not be permitted to testify regarding the "bail process," as it is irrelevant and highly prejudicial. *See Simmons v. Ferrigno*, No. 17-cv-6176, 2024 WL 1229285, *10 (W.D.N.Y., Mar. 22, 2024) ("[t]he Court will not permit [plaintiff's defense attorney] to testify as to bail amounts or plea offers because they are irrelevant") (citing *Sessions v. Rodriguez*, 626 F.App'x 329, 332 (2d Cir. 2015)).

Lastly, it is highly prejudicial and confusing to permit Mr. Nadel to testify as to the criminal case against Plaintiff. The Defendants in this role are police officers. While they arrested Plaintiff

16

on the night of February 7, 2017, there is no evidence they played any role in the deliberations between the District Attorney's Office and Plaintiff or Plaintiff's criminal defense counsel. Stated alternatively, it's the District Attorney who chooses to prosecute and continue to prosecute cases, not the Nassau County Police Department. Since prosecutors working for the state have absolute immunity from § 1983 suits (*Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005), it should follow that any alleged insight into the continuation of that prosecution by Plaintiff's criminal defense attorney should be precluded.

## MOTION V

### PLAINTIFF SHOULD BE PRECLUDED FROM CALLING LAURA BESEDIN AT TRIAL

In Plaintiff's draft JPTO, he also lists Laura Besedin as a witness for trial, claiming Ms. Besedin "possesses knowledge of Mr. Besedin's change in mental status and personally observed the impact this event had on her father and other facts and circumstances relevant to Mr. Besedin's case. *See* **Ex. G**. Plaintiff further indicates Ms. Besedin is being "provided in place of her mother who has recently passed away." *Id.*

Ms. Besedin should be precluded from testifying. Ms. Besedin was never listed by Plaintiff as a potential witness before or after her mother's death, and so Defendants have not had the opportunity to depose her. In fact, Plaintiff only revealed his plan to call her as a witness on the Saturday morning before this motion in limine was due. This late notice is inexcusable, especially since Judith Besedin passed away over seven months ago. Moreover, there is no indication she possesses relevant information. Robert Besedin Jr., Plaintiff's son, testified in his deposition that his sister Laura lived in a separate home from himself and his father at the time of Plaintiff's arrest. *See* **Ex. E**, p. 19. Plaintiff's late wife testified in her deposition that there were family meetings

17

held with the staff at Northport Veterans Administration but Laura would not go. *See* **Ex. C**, p. 156 – 157 (Q: He participated in family meeting with staff [at the VA]? A. Yes we did. Q: Was your daughter ever part of those meetings? A: No.). Even if Ms. Besedin possessed relevant information regarding her father's alleged emotional damages, she is not the best source of this information. Defendants do not object to Plaintiff reading-in portions of Judith Besedin's deposition testimony, assuming Defendants would be able to read-in portions as well. Plaintiff's request to have Laura Besedin testify at trial is another naked attempt to add cumulative trial testimony concerning Plaintiff's mental and emotional status. This Court should preclude her from testifying.

## MOTION VI

### PLAINTIFF SHOULD BE PRECLUDED FROM REQUESTING A SPECIFIC DOLLAR AMOUNT FROM THE JURY

While the Second Circuit has not adopted a flat prohibition of suggesting a specific dollar amount, it does disfavor specifying target amounts for the jury to award. *Consorti v. Armstrong World Industries, Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995). Such suggestions unlawfully anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence. *Id.*; *see also Mileski v. Long Island R.R. Co.*, 499 F.2d 1169, 1172 (2d Cir. 1974) ("[a] jury with little or no experience in such matters, rather than rely upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel…"). In *Consorti*, the Court reasoned "a jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent. Specific proposals have a real potential to sway the jury unduly…We encourage trial judges to bar such recommendations." *Consorti*, 72 F.3d at 1016. As such, Plaintiff should be precluded from suggesting a specific dollar amount to the jury during their opening statement, during the testimony of any witness, and/or during summation.

18

## **CONCLUSION**

For all the foregoing reasons, defendants respectfully request that the Court grant defendants' motions in limine.

Dated:  Carle Place, New York
        September 23, 2024

**Sokoloff Stern LLP**
*Attorneys for Defendants*

*Andrew Blancato*

By:    Andrew Blancato
Kiera Meehan
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No.: 210099

To: **VIA ECF**

Frederick K. Brewington
Law Offices of Frederick K. Brewington
*Attorneys for plaintiff*
556 Peninsula Blvd.
Hempstead, New York 11550

19