

179 WESTBURY AVENUE, CARLE PLACE, NEW YORK 11514   PHONE (516) 334-4500   FAX (516) 334-4501   WWW.SOKOLOFFSTERN.COM

KIERA J. MEEHAN
KMEEHAN@SOKOLOFFSTERN.COM

October 21, 2024

<u>Via ECF</u>
Honorable Nina R. Morrison
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Besedin v. County of Nassau, et al.*
       Docket No. 18-CV-0819 (NRM)(ST)
       File No. 210099

Your Honor:

We represent the Defendants in this action. We write in accordance with Your Honor's October 18, 2024 Order to further address the admissibility of the 911 calls marked as Defendant's Exhibit A and the 911 chronology marked as Defendant's Exhibit B.

The 911 calls are relevant to Defendants' probable cause to arrest Plaintiff for harassment in the second degree. Probable cause is not limited to those charges on Defendants' arrest report or even those "closely related" to the offense identified by the arresting officer. *See Davenpeck v. Alford*, 543 U.S. 146, 153–54 (2004); *Rodriguez v. Vill. of Ossining*, 918 F. Supp. 2d 230, 240-41 (S.D.N.Y. 2013) ("Thus, as long as the defendant officers had probable cause to arrest plaintiff for any crime, the arrests were privileged and cannot form the basis for a false arrest claim under Section 1983")*; see also Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).

Probable cause is a "fluid standard that does not demand hard certainties or mechanistic inquiries." *Figueroa v. Mazza*, 825 F. 3d 89 (2d Cir. 2016). The information forming the basis of probable cause can be received from an initiating 911 call. *See Falls v. Pitt*, 16-CV-8863, 2021 WL 1164185, at *12 (S.D.N.Y. Mar. 26, 2021) (collecting cases to show police officers can make an arrest based on information from a 911 call).

The 911 operators informed Officers Beckwith and Mantovani of plaintiff's harassing conduct. It is undisputed that they were dispatched to Plaintiff's home precisely *because* Plaintiff was placing repeated, harassing calls to 911. (Doc. No. 107, Ex. H at p. 44; Ex. I at pp. 59-63.) This is by itself a crime under Penal Law 240.26(3), harassment in the second degree: "3. He or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose." N.Y. Penal Law § 240.26(3).

SOKOLOFF STERN LLP

Honorable Nina R. Morrison
October 21, 2024
Page 2 of 4

In *Rutigliano v. City of New York*, 326 F. App'x 5, 8 (2d Cir. 2009), the defendant police officers arrived at the scene of an incident based on a call that the plaintiff had been involved in violent altercation. They searched Rutigliano and found pills labeled "Lexapro." They arrested him *only* for criminal possession of a controlled substance, not the purported violent conduct that they had not witnessed. The Second Circuit found that, even though the officers arrested Rutigliano only for CPCS charge, the complaint about the altercation[1] was the evidence that provided them with probable cause sufficient to defeat his Fourth Amendment claim. *Id.* ("subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.") (citing *Devenpeck*, 543 U.S. at 153).

If the officers in *Rutigliano* had probable cause for uncharged crimes relating to an altercation they never witnessed, so do Officers Beckwith and Mantovani here. If anything, the evidence establishing probable cause here is stronger, as it was police dispatchers themselves who experienced the harassing conduct and informed them about it. *See also Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("We have previously held that police officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed.").

Moreover, under the collective or imputed knowledge doctrine, "an arrest is permissible where the actual arresting officer lacks the specific information to form the basis for probable cause but has sufficient information to justify the arrest was known by other law enforcement officials initiating the investigation." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (quoting *United States v. Colon*, 250 F. 3d 130, 135 (2d Cir. 2001) (cleaned up)). "The rule exists because, in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." *United States v. Valez*, 796 F.2d 24, 28 (2d Cir. 1986). We submit that the calls establish probable cause for Plaintiff's arrest; at a minimum, the jury should hear the calls to determine whether they do and evaluate the totality of the circumstances.

There are also material facts in dispute surrounding plaintiff's conduct and demeanor during his interactions with Officers Beckwith and Montavoni and whether they had probable cause, or at least arguable probable cause, to arrest plaintiff for harassment in the second degree based on their interactions with him. Under New York Law, a "person is guilty of harassment in the second degree, when, with intent to harass, annoy, or alarm another person: He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens

---

[1] The district court decision confirms that "Rutigliano was in fact never charged with any crime involving the altercation on the street." *Rutigliano v. City of New York*, No. 07 CIV. 4614 (JSR), 2008 WL 110946, at *3 (S.D.N.Y. Jan. 2, 2008), *aff'd*, 326 F. App'x 5 (2d Cir. 2009).

SOKOLOFF STERN LLP

Honorable Nina R. Morrison
October 21, 2024
Page 3 of 4

to do the same." N.Y. Penal Law § 240.26(1). "The crux of section 240.26(1) is the element of physical contact: actual, *attempted, or threatened*." *Smith v. City of New York*, No. 1:18-CV-05079-MKV, 2021 WL 4267525, at *12 (S.D.N.Y. Sept. 20, 2021) (emphasis added).

There are material issues of fact as to whether Plaintiff smacked Officer Beckwith, and whether he did so "with intent to harass, annoy or alarm" Beckwith. Accordingly, the 911 audio recordings, in which Plaintiff states, *inter alia*, that he is intoxicated and intends to "make an emergency" are probative on the issue of whether Plaintiff acted "with intent to harass, annoy or alarm," as they evidence Plaintiff's demeanor and state of mind immediately before the incident. There would be no "unfair prejudice" by their admission: they are actually the best, most objective, evidence of Plaintiff's behavior at the time of the events at issue. Their admission is as relevant as the silent, truncated, hazy video of a portion of Plaintiff's interaction with the officers.

Just as this Court concluded "that a jury could agree with Plaintiff's contention that the video of the incident corroborates his account and contradicts the officers," (Doc. No. 114 at pp. 18-19), the jury could find that the 911 audio corroborates the officers' account of Plaintiff's demeanor and behavior, and contradicts the Plaintiff's. It would be unfairly prejudicial to permit the jury to view the video but not audio recordings of that day.

Defendants should also be permitted to use the 911 audio recordings to impeach Plaintiff and his witnesses should they offer evidence contradicted by the recordings.[2] It is not hearsay under Fed. R. Evid. 801(d)(2). There are material issues in dispute concerning Plaintiff's conduct on the night of his arrest, as well as his behavior and cognitive state before and afterwards. These issues go to the heart of the ultimate issues in this case and cannot be resolved by a simple stipulation that deprives the jury of actually hearing what Plaintiff said, and how he said it.

Finally, given Plaintiff's claim that he sustained a traumatic brain injury from the incident, there can be no question that the probative value of having the jury hear Plaintiff's own words spoken in his own voice is not substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403.

Turning to Defendants' Exhibit B, the 911 chronology is relevant and admissible to show the frequency of the calls placed by plaintiff on February 7, 2017. Additionally, as stated during the conference on October 18, 2024, the "Event Remarks" on the chronology are transmitted to the officers via the computer in their police vehicles. Thus, the "Event Remarks" on the chronology provide evidence of information that was within the officers' knowledge at the time of the plaintiff's arrest. Therefore, the chronology, and the "Event Remarks" are relevant and probative on the issue of whether the officers had probable cause to arrest the Plaintiff for harassment in the second degree under NY 240.26(1) and/or 240.26(3).

---

[2] Plaintiff cannot dispute the authenticity of the recordings, as he did not do so in response to Defendants' October 2021 Request for Admissions, and admitted it was his voice on the recordings at his March 31, 2023 deposition.

SOKOLOFF STERN LLP

Honorable Nina R. Morrison
October 21, 2024
Page 4 of 4

Thank you for your consideration of this matter.

Respectfully submitted,

SOKOLOFF STERN LLP

Kiera J. Meehan
Andrew Blancato

CC:
Via ECF
Frederick K. Brewington
Law Offices of Frederick K. Brewington
*Attorneys for Plaintiff*
556 Peninsula Blvd.
Hempstead, New York 11550