UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ROBERT BESEDIN, SR.,

        Plaintiff,

    v.

COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT, POLICE OFFICER STEPHEN BECKWITH and POLICE OFFICER JOHN MANTOVANI, in their individual and official capacities,

        Defendants.

No. 18-cv-0819 (NRM) (ST)

---

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' POST-TRIAL MOTIONS

 

SOKOLOFF STERN, LLP
Kiera J. Meehan
Andrew Blancato
*Attorney for Defendants*
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................i

ARGUMENT ........................................................................................................................1

I.   Two Of The Court's Evidentiary Rulings Caused A Seriously Erroneous Result And A Miscarriage Of Justice ........................................................................1

II.  Defendants Should Be Granted Judgment As A Matter Of Law On Plaintiff's Malicious Prosecution Claim, Or It Should Be Set Aside .......................................4

III. Defendants Should Be Granted Judgment As A Matter Of Law On Plaintiff's Claims Of Abuse Of Process, Or The Claim Set Aside ...........................................9

IV.  The Jury's Award Of Punitive Damages Is Excessive, Unsupported By Evidence, And Should Be Set Aside Or, Alternatively, Remitted .........................11

V.   The Compensatory Damages Award Is Unsupported By Evidence And Should Therefore Be Set Aside Or, Alternatively, Remitted ............................................13

CONCLUSION ...................................................................................................................15

TABLES OF AUTHORITIES

**CASES**                                                                     **PAGE(S)**

*Anderson Group, LLC v. City of Saratoga Springs*,
   805 F. 3d 34 (2d Cir. 2015) ................................................................................................... 13

*Berman v. Silver, Forrester & Schisano*,
   549 N.Y.S.2d 125 (2d Dept. 1989) ............................................................................................ 9

*Bermudez v. City of New York*,
   790 F.3d 368 (2d Cir. 2015) ..................................................................................................... 5

*BMW v. Gore*,
   (517 U.S. 559 [1996] ...................................................................................................... 11, 12

*Butler v. Hesch*,
   116-cv-1540 (MAD), 2020 WL 1332476 (N.D.N.Y. Mar. 23, 2020) ............................................ 5

*Curiano v. Suozzi*,
   63 N.Y. 2d 113 (1984) ........................................................................................................... 10

*DeRienzo v. Metro. Transp. Auth.*,
   694 F. Supp. 2d 229 (S.D.N.Y. 2010) ................................................................................. 1, 2

*DiSorbo v. Hoy*,
   343 F. 3d 172 (2d Cir. 2003) ................................................................................................. 11

*Doctor's Associates, Inc. v. Weible*,
   92 F.3d 108 (2d Cir. 1996) .................................................................................................... 10

*Douglas v. City of New York*,
   595 F. Supp. 2d 33 (S.D.N.Y. 2009) .................................................................................... 10

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*,
   136 F.3d 276 (2d Cir. 1998) ................................................................................................... 7

*Galgano v. Cnty. of Putnam, New York*,
   16-cv-3572 (KMK), 2024 WL 1623401 (S.D.N.Y. Apr. 15, 2024) ............................................ 6

*Genovese v. County of Suffolk*,
   128 F. Supp. 3d 661 (E.D.N.Y. 2015) ............................................................................ 14, 15

*Gibeau v. Nellis*,
   18 F.3d 107 (2d Cir.1994) ..................................................................................................... 13

i

*Goldring v. Zumo,*
  14-cv-4861 (BMC), 2015 WL 148451 (E.D.N.Y. Jan. 12, 2015) .................................................. 10

*Hartman v. Moore,*
  547 U.S. 250 (2006) ....................................................................................................................... 6

*Hartman v. Snelders*,
  04-cv-1784 (CLP), 2010 WL 11626508 (E.D.N.Y. Jan 28, 2010) ................................................ 3

*Howard v. Walgreen Co.,*
  605 F.3d 1239 (11th Cir. 2010) ..................................................................................................... 7

*Israel v. Spring Indus., Inc.*,
  No. 98-cv-5106 (ENV), 2006 WL 3196956 (E.D.N.Y. Nov. 3, 2006) ......................................... 2

*Jennings v. Yurkiw*,
  18 F. 4th 383 (2d Cir. 2021) ................................................................................................... 11, 12

*Kennedy v. City of New York*,
  No. 150284/2015, 2019 WL 6117948 (Sup. Ct. N.Y Cty. Nov 18, 2019) .................................. 14

*LaBounty v. Coughlin*,
  137 F. 3d 68 (2d Cir. 1998) ........................................................................................................... 8

*Lewis v. Cowen*,
  165 F.3d 154 (2d Cir. 1999) ...................................................................................................... 8, 9

*Liberty Mut. Fire Ins. Co. v. JT Walker Indus.*,
  554 F App'x 176 (4th Cir. 2014) ................................................................................................... 8

*Lore v. City of Syracuse*,
  670 F.3d 127 (2d Cir. 2012) .......................................................................................................... 8

*Lowth v. Town of Cheektowaga*,
  82 F.3d 563 (2d Cir. 1996) ............................................................................................................ 6

*Mandell v. County of Suffolk*,
  316 F.3d 368 (2d Cir. 2003) .......................................................................................................... 8

*Manganiello v. City of New York*,
  612 F.3d 149 (2d Cir. 2010) .......................................................................................................... 4

*Mangino v. Inc Vill. Of Patchogue*,
  808 F.3d 951 (2d Cir. 2015) ........................................................................................................ 10

*Martinez v. City of New York,*
  No. 16-cv-79 (NRM), 2023 WL 4627739. (E.D.N.Y. July 19, 2023) ................................... 12, 13

*Munafo v. Metro. Transp. Auth.*,
  00-cv-0134 (ERK), 2003 WL 21799913 (E.D.N.Y. Jan. 22, 2003) .................................... 1

*Negron v. Wesolowski*,
  536 FED. Appx. 151 (2d Cir. 2013) ................................................................................ 7

*Payne v. Jones*,
  711 F.3d 85 (2d Cir. 2013) ............................................................................................ 11

*Rothstein v. Carriere*,
  373 F.3d 275 (2d Cir. 2004) ............................................................................................ 8

*Savino v. City of N.Y.*,
  331 F.3d 63 (2d Cir.2003) ............................................................................................... 9

*Smith v. Cnty. of Nassau*,
  2024 WL 4407007 (E.D.N.Y. Sept. 10, 2024) .............................................................. 10

*Tardif v. City of New* York,
  344 F. Supp. 3d 579 (S.D.N.Y. 2018) ............................................................................. 1

*United States v. Jamil*,
  707 F.2d 638 (2d Cir. 1983) ........................................................................................ 4, 7

*Watson v. Sims,*
  648 F. App'x 49 (2d Cir. 2016) ....................................................................................... 5

**Statutes**

42 USC § 1983 ..................................................................................................................... 13

**Rules**

FRCP 59 .................................................................................................................................. 8

## **ARGUMENT**

### POINT I
### TWO OF THE COURT'S EVIDENTIARY RULINGS CAUSED A SERIOUSLY ERRONEOUS RESULT AND A MISCARRIAGE OF JUSTICE

Two of the rulings made by the Court resulted in an erroneous jury verdict and amounted to a miscarriage of justice. First, the Court permitted Plaintiff's expert, Dr. N.G. Berrill, PhD, to testify that Plaintiff sustained a causally related traumatic brain injury ("TBI") on February 7, 2017. Second, the Court precluded most of the 9-1-1 calls made by Plaintiff on the date of arrest.

(1) Dr. Berrill's Testimony

Dr. Berrill failed to perform a differential diagnosis excluding other causes of Plaintiff's neuropsychological condition – such as the permanent effects of his prior TBI, his alcoholism, or his vascular issues – before opining that Plaintiff sustained a TBI that was causally-related to his arrest on February 7, 2017. *Id.*, pp. 5 – 10. Dr. Berrill was required to conduct a proper differential diagnosis in order to ensure his causation opinion was reliable under the *Daubert* expert standard. *See Tardif v. City of New* York, 344 F. Supp. 3d 579 (S.D.N.Y. 2018); *DeRienzo v. Metro. Transp. Auth.*, 694 F. Supp. 2d 229, 236 (S.D.N.Y. 2010) ("the expert's testimony must at least address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors identified by the defendant"); *Munafo v. Metro. Transp. Auth.*, 00-cv-0134 (ERK), 2003 WL 21799913, at *18 (E.D.N.Y. Jan. 22, 2003) ("[t]o the extent that [expert's] testimony touches upon matters of causation, it will satisfy *Daubert's* prerequisites for reliability only if the doctor conducted a meaningful 'differential diagnosis' ruling out other possible contributing factors").

Dr. Berrill's failure to perform a differential diagnosis renders his causation opinion unreliable and speculative. This is particularly true since Dr. Berrill explicitly acknowledged the serious impact that factors such as pre-existing TBI, alcoholism, and vascular issues had on Plaintiff's neurocognitive

1

state. *See* ECF Dkt. No. 116, **Ex. B** (Berrill EBT) at p. 53.[1] At his deposition, Dr. Berrill testified that he *could not rule out* what impact alcohol use might have had on plaintiff's cognitive function. *Id.* at p. 78: 12-16. He further testified that alcohol "can essentially destroy brain cells or it can impede brain functioning. So you have a host of neuropsych problems that can crop up as a consequence of chronic, severe alcohol consumption." *Id.* at pp. 65: 4 – 13, 75:24 – 76:3. Yet

In opposition, Plaintiff does not, and cannot, dispute that Dr. Berrill failed to perform a differential diagnosis. Rather, plaintiff contends that Dr. Berrill "considered Mr. Besedin's medical history, including his prior TBI, vascular and alcohol related issues, recognized that they had medical significance, and incorporated them into his opinion" Memo. in Opp., p.5. This contention is erroneous, as Dr. Berrill's opinion did not *rule out* alternative causes, which is the specific purpose of a differential diagnosis. *See DeRienzo.*, 694 F. Supp. 2d at 240 (precluding plaintiff's causation opinion as "not the product of an acceptable differential diagnosis" as he did not "rule out other possible causes of plaintiff's injuries"); *Israel v. Spring Indus., Inc.*, No. 98-cv-5106 (ENV), 2006 WL 3196956, at *5 (E.D.N.Y. Nov. 3, 2006) ("the expert's testimony must at least address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors identified by the defendant").

As Dr. Berrill himself *emphasized* the likelihood that other causes contributed to Plaintiff's deteriorated neuropsychological state, yet failed to rule out those causes through a differential diagnosis, his causation opinion should have been precluded as speculative and unreliable. The Court's ruling on this issue was erroneous and a miscarriage of justice.

---

[1] Dr. Berrill's expert report and deposition transcript were previously filed under seal on September 23, 2024 as part of Defendants' motion *in limine,* referenced respectively as **Exhibit A** and **Exhibit B**. To ensure the majority of this information remains confidential, Defendants will cite to that exhibit rather than annexing it to the current post-trial motion. If the Court prefers, Defendants will provide a courtesy copy or file an amended declaration with the exhibits attached.

(2) <u>The 911 Calls</u>

The Court precluded Defendants from offering into evidence the majority of the 911 recordings of the calls placed by Plaintiff on the date of his arrest, February 7, 2021. *See generally*, **Ex. B**, pp. 3 – 5, 259 – 274. This ruling specifically precluded Defendants from offering evidence as to Plaintiff's combative state only moments before his interaction with the defendant officers, which are "important factors for the jury to consider in evaluating the reasonableness of defendants' actions during the arrest." *Hartman v. Snelders*, 04-cv-1784 (CLP), 2010 WL 11626508, at *16 (E.D.N.Y. Jan 28, 2010). Plaintiff's aggressive statements to 911 suggest behavior relevant to the jury in determining whether Plaintiff resisted arrest. Moreover, these calls evidenced that Plaintiff's behavior on the night of his arrest aligned with the behaviors observed by Plaintiff's wife prior to this incident, such as confusion, depression, crying or laughing at inappropriate times, difficulty following a series of step-by-step instructions, repeating phrases, and behaving "aggressive and nasty." Before Plaintiff's arrest, Mrs. Besedin reported these behaviors to Plaintiff's primary care physician as evidence of the "steady decline" in Plaintiff's mental state. Accordingly, these recordings were relevant to malicious prosecution and damages.

Plaintiff's claim that Defendants failed to argue the calls were relevant to Plaintiff's demeanor and mental state is false. *See ECF Dkt. 139*, p. 3. Moreover, while the 911 call may not have indicated the presence or absence of TBI symptoms, Plaintiff's speech and demeanor on the 911 recordings directly contradicts his claim that the decline in his mental state began in earnest after the subject arrest. The jurors did not need to make any kind of scientific assessment in evaluating Plaintiff's statements. Rather, they could have simply relied on their own common sense to evaluate whether what they heard was consistent with the description of Plaintiff's general mental state and demeanor prior to his arrest presented by Laura Besedin and Dr. Berrill.

3

Furthermore, Plaintiff's demeanor during the 911 calls was relevant to the issue of whether Defendants had probable cause to prosecute Plaintiff for resisting arrest. Plaintiff's contention that preclusion of the calls "did not leave [D]efendants defenseless" seriously disparages the significance of the evidence that was precluded. Opp., p. 7. Throughout trial, Defendants argued that Plaintiff's behavior was aggressive and bizarre. Plaintiff completely denied this behavior, even denying he ever pointed at Defendant Beckwith. *See* **Ex. D**, pp.539:3-5. The referenced portions of the 911 calls would have provided virtually irrefutable evidence of Plaintiff's provocative and aggressive behavior, evidence that would have certainly aided this jury's review of whether Plaintiff resisted arrest.

Moreover, impeaching Plaintiff with these calls as Defendants attempted to do would have empowered the jury to "consider whether the witness had an explanation for the inconsistency" as the Court instructed. **Ex F**, p. 928:2-5. The nullification of this singularly impactful evidence is likely why the Second Circuit has cautioned for Rule 403 to be used "sparingly." *United States v. Jamil*, 707 F.2d 638, 642 (2d Cir. 1983). Instead of preclusion, the Court could have provided additional limiting instructions or ordered more precise preclusions of the calls. For the reasons stated above the broad preclusion of the majority of the calls was serious error and a miscarriage of justice.

## POINT II
### DEFENDANTS SHOULD BE GRANTED JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S MALICIOUS PROSECUTION CLAIM, OR IT SHOULD BE SET ASIDE

The evidence presented at trial failed to establish the necessary elements of a claim for malicious prosecution and the claim should be dismissed or set aside. To establish malicious prosecution, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).

Initiation or Continuation

The record at trial demonstrates that Officer Beckwith, with the support of a detective and the Nassau County District Attorney's Office ("NCDA") created the accusatory instruments. Mantovani was not involved, and therefore did not initiate a criminal proceeding against Plaintiff. *See* **Ex. A**, pp. 143, 185; **Ex. B**, p. 373: 12 - 23.

The record is also devoid of evidence that Mantovani continued the prosecution against Plaintiff. There is no evidence that Mantovani gave false information to the NCDA or anyone else about this matter. While Mantovani spoke with the NCDA "two or three times," those discussions simply entailed giving his "recollection of what happened that evening." (*see* **Ex. C**, p. 302: 1 – 10) Merely providing his recollection is not continuation. *Watson v. Sims,* 648 F. App'x 49, 52 (2d Cir. 2016) (officer who provided "deluge" of info to prosecutor did not take an active role in prosecution).

In opposition, Plaintiff contends Mantovani continued the prosecution by sharing his desire to prosecute Plaintiff with the NCDA. This argument ignores that to qualify as continuation an officer's conduct must be forceful and recurrent. *See Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (officer must "play an active role in the prosecution, such as giving advice *and* encouragement or *importuning* the authorities to act") (emph. added). In order for a claim of continuation to be premised on information passed onto a prosecutor by an officer, the information provided must be knowingly false or fabricated. *Butler v. Hesch*, 116-cv-1540 (MAD), 2020 WL 1332476, at *15 (N.D.N.Y. Mar. 23, 2020) ("nearly all cases in which law enforcement officers were found to have initiated or continued a prosecution for purposes of a malicious prosecution claim involve officers who provided knowingly false and/or fabricated evidence to unwitting prosecutors").

5

Here, there is no evidence that the information Mantovani gave to the NCDA was false. In fact, there was no evidence presented at trial of any specific statement made by Officer Mantovani other than that he "took no firm position" and said to do 'whatever will stick'" (**Ex. J** at p. 3).

Moreover, there is no evidence that Mantovani's statements to the NCDA had any impact on the NCDA's prosecutorial decisions. "Where an allegation of misconduct is directed at police, a malicious-prosecution claim cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure exerted by police." *Hartman v. Moore*, 547 U.S. 250, 263 (2006) (internal citations omitted). In opposition, Plaintiff wholly fails to address the fact that there is no evidence that Mantovani had any communication with the NCDA until *October 3*, more than seven months after prosecution was initiated and more than six months after the NCDA obtained the surveillance footage. Accordingly, even if Mantovani's statements to the NCDA conflicted with the surveillance footage as Plaintiff claims (Opp., pp. 12 – 13), there is no evidence that his statements had any impact on the prosecutor's decisions or otherwise distorted the process by which Plaintiff was prosecuted. *See Galgano v. Cnty. of Putnam, New York*, 16-cv-3572 (KMK), 2024 WL 1623401, at *93 (S.D.N.Y. Apr. 15, 2024) (no evidence that officer manipulated testimony of witness where prosecutor was aware that witness was high at the time she was interviewed).

Malice

Plaintiff's malicious prosecution claim should also be set aside as Plaintiff failed to establish that either Defendant acted with actual malice. As stated above, there was no evidence presented of any specific statements made by Mantovani to the NCDA beyond his general belief that Plaintiff should be prosecuted. Mantovani's statement to "do whatever sticks" is insufficient. Actual malice requires "something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996), as amended (May 21, 1996). Also lacking was any

6

evidence presented that Beckwith maliciously initiated the prosecution against Plaintiff. To the contrary, the evidence demonstrated that this was Beckwith's first arrest and that he drafted the charging documents with the assistance of a supervisor. *See generally*, **Ex. B**.

Plaintiff's paltry claim that Defendants failed to preserve this argument in their Rule 50(a) arguments is unavailing, as Rule 50 does not require strict identity of issues. The purpose of the rule is satisfied as long as the issues are closely related such that opposing counsel and the trial court have notice of the deficiencies asserted by the moving party. *See Negron v. Wesolowski*, 536 FED. Appx. 151, 153 - 154 (2d Cir. 2013); *see also*, *Howard v. Walgreen Co.,* 605 F.3d 1239, 1243 (11th Cir. 2010) ("strict identity of issues, however, is not required"). Moreover, the specificity requirement must be viewed in context, including the context of any colloquy between the Court and counsel for all parties. *See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 287 (2d Cir. 1998).

Defendants moved to dismiss malicious prosecution during their 50(a) argument as to both officers based on several different reasons including "probable cause for all of the arrested offenses." **Ex. E**, pp. 831 – 832. As the Court instructed, malice can be inferred from the absence of probable cause but only where "probable cause was *so totally lacking* as to reasonably permit an inference that the proceeding was maliciously instituted" (emph. added). **Ex. M** at p. 24. Plaintiff therefore had adequate notice that Defendants were seeking to dismiss the malicious prosecution claim on the grounds that Plaintiff failed to demonstrate the elements of that claim, including malice.

Qualified Immunity

Defendants also clearly raised the defense of qualified immunity during their 50(a) argument for *"*any review of their actions." *Id.* at 835.[2] Defendants need not expound on each fact in support of their motion, nor could they be reasonably expected to do so during the real time of trial. *See*

---

2 Full qualified immunity was both an affirmative defense pled in Defendants' answer (ECF Dkt. No. 7, ¶ 156) and grounds on which they moved in summary judgment (ECF Dkt. No. 107, Ex .17, p. 20).

7

*Liberty Mut. Fire Ins. Co. v. JT Walker Indus.*, 554 F App'x 176, 185 (4th Cir. 2014) ("[t]he fact that a party expands its reasoning and offers more specificity in its post-trial motion does not run afoul of the Federal Rules . . ."). Plaintiff, who did not object or question any portion of Defendants' Rule 50(a) motion, had notice of the legal and factual basis on which its 50(b) motion was made.

Nevertheless, the notice requirement of Rule 50 is not required where, as here, the jury's verdict constitutes manifest injustice. *See Lore v. City of Syracuse*, 670 F.3d 127, 153 (2d Cir. 2012); *Rothstein v. Carriere*, 373 F.3d 275, 291 (2d Cir. 2004). Moreover, Defendants' Notice of Motion and Memorandum of Law clearly sought to dismiss *or set aside* the malicious prosecution claim, pursuant to Rule 50 *and* 59. *See ECF Dkts. 160, 162, Notice of Motion,* Memo of Law, pp. 1 – 3, 10, 19. Since there is no specificity and/or notice requirement applicable to FRCP 59, Plaintiff's argument is without merit.

Plaintiff's statement that "it was clearly established that subjecting a person to a criminal prosecution based upon false charges violates the Fourth Amendment," misapplies the standard.3 Opp., p.17. "The relevant inquiry is not whether the defendant should have known there was a federal right, in the abstract" but whether their "specific actions" violated the plaintiff's rights. *See Lewis v. Cowen*, 165 F.3d 154, 166 – 167 (2d Cir. 1999)); *LaBounty v. Coughlin*, 137 F. 3d 68, 73 – 74 (2d Cir. 1998) ("if the right is defined too broadly, plaintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights") (internal citation omitted). In other words, qualified immunity will apply if an *officer's specific actions* were "objectively reasonable for [him] to believe his conduct did not violate plaintiff's rights." *Mandell v. County of Suffolk*, 316 F.3d 368 (2d Cir. 2003).

---

3 Defendants acknowledge Plaintiff need only demonstrate that probable cause failed for either resisting arrest or assault in the second degree. Accordingly, since a particular finding of fact was not essential to a determination of whether a defendant is entitled to qualified immunity, Defendants were not required to request special interrogatories to preserve this issue for the subject motion (nor has Plaintiff argued this).

8

The specific action in question was the prosecution of an intoxicated, belligerent man for resisting arrest and assault in the second degree. The evidence demonstrates that Plaintiff resisted apprehension on his porch, that Defendant Mantovani was injured in the process of this arrest, and that Mantovani's injury would not have occurred but-for Plaintiff's resistance. In light of these facts, it was objectively reasonable for Defendants to believe that they did not violate Plaintiff's 4th Amendment rights to prosecute him for resisting arrest and felony assault, especially Defendant Mantovani, who is only alleged to have "continued" the prosecution.

Finally, Plaintiff's bold statement that the verdict "forecloses any entitlement to qualified immunity" is erroneous. Opp., p. 25. Were this accurate, courts would be deprived of jurisdiction to determine the issue post-judgment. As courts have the authority to grant qualified immunity following a verdict, even when punitive damages are awarded, Plaintiff's argument fails. *See Lewis*, 165 F.3d at 154 (reversing a district court's denial of Rule 50 motion in a 1983 case, granting qualified immunity to defendants).

### POINT III
### DEFENDANTS SHOULD BE GRANTED JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CLAIMS OF ABUSE OF PROCESS, OR THE CLAIM SET ASIDE

Plaintiff's abuse of process claim should be dismissed or in the alternative, set aside because it is not supported by evidence in the record. A plaintiff may assert a malicious abuse of process claim in New York where a defendant: "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of N.Y.,* 331 F.3d 63, 76 (2d Cir.2003).

Plaintiff's abuse of process claim must fail for the same reason the malicious prosecution claim must fail – because probable cause existed for Plaintiff's prosecution. *See Berman v. Silver, Forrester & Schisano*, 549 N.Y.S.2d 125, 127 (2d Dept. 1989). Moreover, the evidence presented at trial failed to demonstrate that Defendants sought to obtain a collateral objective outside the legitimate ends of

the process. Plaintiff's showing against Mantovani, who did not initiate Plaintiff's prosecution, was especially deficient. *See Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003) ("[i]n order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper purpose in *instigating* the action") (emph. added) (internal citations omitted).

In opposition, Plaintiff supports this claim by citing to Mantovani's testimony that he "'told the DA's Office that he 'wanted to proceed with the felony.'" Opp., p. 19. This statement does not evidence an intent outside of the legitimate ends of process let alone that its the primary purpose of the process. *See Doctor's Associates, Inc. v. Weible*, 92 F.3d 108, 110 (2d Cir. 1996) *(*"legal process *primarily* to accomplish a purpose for which it is not designed"); *Curiano v. Suozzi*, 63 N.Y. 2d 113 (1984). Plaintiff's bald assertion that Mantovani was "so invested" in achieving some other goal is not supported by any evidence and is insufficient to maintain an abuse of process claim. *See Douglas v. City of New York*, 595 F. Supp. 2d 33, 344 (S.D.N.Y. 2009) (holding that while fabricating assault charges to save one's job could be abuse of process, plaintiff's only evidence, news reports from 2006 describing police quotas, was insufficient to maintain abuse of process claim).

Finally, Defendants are entitled to qualified immunity, a claim which, again, was preserved. *See* **Ex. E**, p. 835. Moreover, Defendants argued in support of their Rule 50(a) motion that probable cause existed, and the Second Circuit has "clearly stated, however, that the 'very existence' of confusion on this issue establishes that a defendant officer is entitled to qualified immunity when their use of process is supported by probable cause." *Smith v. Cnty. of Nassau*, 2024 WL 4407007, at *5 (E.D.N.Y. Sept. 10, 2024) (quoting *Mangino v. Inc Vill. Of Patchogue*, 808 F.3d 951, 959 (2d Cir. 2015). *See also*, *Goldring v. Zumo,* 14-cv-4861 (BMC), 2015 WL 148451, at *5 (E.D.N.Y. Jan. 12, 2015) (the right to be free from malicious abuse of process, as plaintiff would define it . . . is not clearly established"). Both Defendants are entitled to qualified immunity, especially Mantovani, who

10

certainly did not violate clearly established law by merely voicing support for a prosecution he did not initiate. The abuse of process claim should be dismissed as a matter of law or set aside.

## POINT IV
### THE JURY'S AWARD OF PUNITIVE DAMAGES IS EXCESSIVE, UNSUPPORTED BY EVIDENCE, AND SHOULD BE SET ASIDE OR, ALTERNATIVELY, REMITTED

This Court should either lower the damages awarded by the jury or set aside the awards completely and hold a new trial, as the damages awarded shock the conscience.

The jury's award of $800,000 of punitive damages against Beckwith is excessive on its face, especially considering he was found *not* liable for false arrest, assault, or excessive force. **Ex. L**. When applying the guideposts from *BMW v. Gore* (517 U.S. 559 [1996]), the excessiveness becomes clearer, as the reprehensibility of Beckwith's actions (prosecution) is low and the comparable criminal fine does not approach $800,000. Beckwith was a first-year officer aided in the prosecution by his superiors and the NCDA. His behavior does not warrant any punitive damages, let alone $800,000.

The punitive damages award of $800,000 against Mantovani is also excessive when considering comparable criminal penalties and when comparing his actions to those of defendants in other 1983 cases within this Circuit. Even when accepting Plaintiff's version of events, the crux of Defendant Mantovani's physical contact with Plaintiff was less than five seconds. He did not strike, punch, kick, or use a weapon against the Plaintiff. The jury's award greatly exceeds the punitive damages awards in cases involving conduct that is far more egregious and reprehensible. *Jennings v. Yurkiw*, 18 F. 4th 383 (2d Cir. 2021) ($355,000 in punitive damages awarded to plaintiff who sustained nasal fractures as a result of being beaten in front of his toddler); *Payne v. Jones*, 711 F.3d 85 (2d Cir. 2013) (Punitive damages of $300,000 remitted to $100,000 where defendant officer punched plaintiff in the face and neck 7-10 times and kneed him in the back several times, all while plaintiff was handcuffed on a bed.); *DiSorbo v. Hoy*, 343 F. 3d 172 (2d Cir. 2003) (punitive damages award remitted

11

to $75,000 where plaintiff was pushed against a wall, grabbed around the throat and choked until she began to lose vision, then thrown to the ground and struck repeatedly)  Notably, there is no evidence that Mantovani committed "repeated instances of misconduct." *Gore*, 517 U.S. at 576 – 577.

Plaintiff's reliance on *Jennings v. Yurkiw*, *supra,* only demonstrates how excessive the jury's verdict was. Not only did the award against three officer total far less than the awards against each Defendant here, but the behavior of the *Jennings* officers was objectively more reprehensible, as it involved repeated, unprovoked assaults on plaintiff, rendering him unconscious in front of his son. *See Jennings*, 18 F. 4th at 387 – 388.  Officer *Yurkiw* was also found to have manipulated medical evidence, superficially bolstering his own injuries to prosecute plaintiff while lying about the bruising on his knuckles that an examiner found was consistent with punching.  *Id.* at 388.  The Court found the officers took "elaborate steps to cover up their misconduct." *Id.* at 391.  This is another important difference between *Jennings* and this case.  Plaintiff's colorful screed on "cover-ups" references Richard Nixon but fails to acknowledge that Defendants in this case never concealed evidence. It is not a "cover-up" when the factfinder has all the evidence, as the NCDA did, as Internal Affairs did, and as Plaintiff's criminal defense attorney did.   Defendants merely stuck to their story, which, even if the jury did not believe, is not tantamount to suppression or trickery.

Regarding Defendant Beckwith in particular, Plaintiff fails to cite *one* case in *any* jurisdiction where an officer's malicious prosecution or abuse of process verdict sustains a punitive damages award, let alone an $800,000 award. Instead, Plaintiff cites *Martinez v. City of New York*, a case which Plaintiff concedes turns on deliberate indifference to medical needs. *Martinez v. City of New York,* No. 16-cv-79 (NRM), 2023 WL 4627739. (E.D.N.Y. July 19, 2023). Once again, Plaintiff's reliance on *Martinez* only serves to highlight how excessive the award of $800,000 against each individual officer was.  Plaintiff describes Martinez as a deliberate indifference to medical needs case where plaintiff

12

endured a multi-hour ordeal, experienced extreme pain, and begged for medical care after being subjected to a violent assault while in handcuffs. Opp. P. 10  Yet, the punitive damages awarded against each officer in that case equal 1/8 of each award here, an especially disperate amount considering deliberate indifference to medical needs was not pled by Plaintiff. ECF. Dkt. No. 4.[4]

Plaintiff's opposition lays bare the excessiveness of the punitive damages awards. Plaintiff cites no precedent in which similarly situated officers were each slapped with $800,000 in punitive damages. Instead, Plaintiff resorts to name-calling, identifying Defendant Mantovani as "evil incarnate" and calling Defendant Beckwith a "callous, deceitful liar" while straining to compare this matter to a Fair Housing Act case and an employment discrimination case from the Eleventh Circuit. Opp., pp. 31 – 32.  In reality, Defendants are not evil or treacherous, evidenced by the fact no discipline was levied against them, and no criminal charges were filed against them, something Plaintiff's criminal attorney admitted he did not recommended. **Ex. B**, p. 236.  There is nothing reasonable about the award of $1.6 million in punitive damages and therefore, it should be vacated.

### POINT V
### THE COMPENSATORY DAMAGES AWARD IS UNSUPPORTED BY EVIDENCE AND SHOULD THEREFORE BE SET ASIDE OR, ALTERNATIVELY, REMITTED

The jury's award of compensatory damages in the amount of $760,000 is also excessive and should be set aside as well. To recover compensatory damages under 42 USC § 1983, "a plaintiff must prove that his injuries were proximately caused by a constitutional violation." *Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir.1994). "Courts will not permit recovery when the connection between the claimed loss and the tortious act is speculative or uncertain." *Anderson Group, LLC v. City of Saratoga Springs*, 805 F. 3d 34 (2d Cir. 2015).

---

[4] Plaintiff likely made the decision not to plead because, unlike the plaintiff in *Martinez* who received surgery, Plaintiff's battery of tests from the hospital the night of his arrest indicated he suffered no serious injury, and he testified during trial he didn't make any complaints about his head to the police or to hospital staff. **Ex. D**, pp. 545 – 552.

13

The evidence for Plaintiff's injuries was speculative at best and non-existent at worst. Plaintiff failed to demonstrate serious physical injuries, pain and suffering, or other costs with any particularity. Even assuming Plaintiff suffered a concussion, the testimony that Plaintiff suffers residual issues as a result was scarce and vague, and failed to translated to pain or suffering. *See generally*, **Ex. C,** pp. 397 – 437. The only connection Plantiff's expert drew between the incident and his current state was that it "played a role" in his decline. **Ex. E**, pp. 633: 21 – 634: 3. Such tenuous testimony does not warrant an award of over three quarters of a million dollars.

In opposition, Plaintiff improperly calculates the damages attributable to Plaintiff's "loss of liberty." As Plaintiff's arrest was deemed valid by the jury, Plaintiff's loss of liberty begins not from the time he was arrested, but from the time he was arraigned. *Genovese v. County of Suffolk*, 128 F. Supp. 3d 661, 676 – 677 (E.D.N.Y. 2015). He was arraigned in the late afternoon of February 8, 2017 and posted bail two days later on February 10, 2017, less than 48 hours later. *See* **Ex. I.**

Yet again, Plaintiff can only draw comparisons to several cases resulting in considerably smaller compensatory awards, such as *Kennedy v. City of New York*, where the trial court upheld a total compensatory damages verdict of $400,000 for a plaintiff who sustained a mild TBI, PTSD, and several burn marks after an NYPD officer used excessive force against her. Opp., pp. 37 – 38; *Kennedy v. City of New York*, No. 150284/2015, 2019 WL 6117948 (Sup. Ct. N.Y Cty. Nov 18, 2019). In *Kennedy*, however, the trial court noted plaintiff's treating neuropsychologist testified that plaintiff "has and continues to suffer" from PTSD. *Kennedy*, 2019 WL at *35.

In this case, Dr. Berrill made no such proclamations about either Plaintiff's TBI or his PTSD. In fact, Dr. Berrill testified Plaintiff *wasn't treated* for any psychiatric problems at the Veterans Administration Hospital (**Ex. E**, p. 635), and when pressed, Dr. Berrill couldn't identify where in the VA records PTSD was even mentioned. *Id.* at pp. 673 – 680. And while Dr. Berrill mentioned his late

14

wife's concern for Plaintiff's psychological problems aided his diagnosis, the letter his late wife wrote in early February 2017 clearly demonstrates Plaintiff was in serious psychological decline *prior* to February 7, 2017.  *Id.* at 665 – 668.

As the extent to which this incident causally attributed to that decline cannot be determined without resorting to speculation, Plaintiff's compensatory damages should be set aside as a matter of law.

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court grant the aforementioned motions and any such further relief as this Court deems just and proper.

Dated: Carle Place, New York
      January 17, 2025

                                              Sokoloff Stern LLP
                                              Attorneys for Defendants

                                          *Andrew Blancato*
                          By:   Kiera J. Meehan
                                Andrew Blancato
                                179 Westbury Avenue
                                Carle Place, New York 11514
                                (516) 334-4500
                                File No. 210099

To: **VIA ECF**

Frederick K. Brewington
Scott Korenbaum
Law Offices of Frederick K. Brewington
*Attorneys for plaintiff*
556 Peninsula Blvd.
Hempstead, New York 11550

15